GEICO INSURANCE COMPANY,
Appellant–Defendant,

v.

Freda ROWELL, Appellee–Plaintiff.

No. 45A03–9806–CV–253.

Court of Appeals of Indiana.

Jan. 13, 1999.

Rehearing Denied Feb. 18, 1999.

David W. Pera, Buoscio, Pera, Krammer & Nowak, Merrillville, for Appellant.

James W. Myers, III, Valparaiso, Christina L. Maas, Valparaiso, for Appellee.

## OPINION

BAKER, Judge.

Appellant-defendant GEICO Insurance Company (GEICO) brings this interlocutory appeal of the trial court's grant of appellee-plaintiff Freda Rowell's various motions for extension of time to respond to GEICO's motion for summary judgment. GEICO also appeals from the trial court's denial of its motion for summary judgment on Rowell's claim for uninsured/underinsured coverage and requests sanctions against Rowell pursuant to Ind. Trial Rule 11(A).

### FACTS

The facts most favorable to Rowell reveal that on October 17, 1995, Rowell sustained injuries in an automobile collision. While stopped in traffic, Rowell's vehicle was struck from behind by a vehicle driven by Jean Poulos. Thereafter, Poulos' vehicle was hit by a vehicle operated by Deborah Stasiak, causing Rowell to again be impacted. At the

time of the collision, Rowell had uninsured/underinsured motorist coverage through GEICO. Additionally, Stasiak was uninsured, and Poulos was insured by American States Insurance Company (American States).

Thereafter, on March 19, 1996, Rowell filed a complaint for declaratory judgment against Stasiak, Poulus, American States and GEICO, seeking recovery for her injuries. Negotiations with American States and Poulos proved successful and, on September 18, 1997, Rowell received a letter from American States containing an offer to settle for $50,-000, the amount representing Poulos' policy limit. This correspondence also included a release and stipulation for dismissal. A copy of this correspondence was sent to GEICO on the same day. On September 24, 1997, GEICO by letter waived any underinsured motorist subrogation rights and agreed not to assert any claim for medical payments against the settlement proceeds. R. at 184. Rowell then executed the release she received from American States on September 25, 1997 which read, in pertinent part, as follows:

> I, **FREDA ROWELL**, ... hereby release and forever discharge **JEAN L. POULOS** and **AMERICAN STATES INSURANCE COMPANY**, their heirs, executors, administrators, agents and assigns, together with all other persons, firms and corporations, from all claims, demands, debts, suits, actions and causes of action, and for any injuries, damages, costs, loss of services, expenses, and compensations whatsoever, at law or in equity, and however arising, on account of or in any way growing out of an accident, casualty, or event that occurred on or about the **17th day of October, 1995, at 5201 Indianapolis Boulevard in East Chicago, Lake County, State of Indiana,** and on account of which is asserted that the undersigned sustained injuries, damages, and losses for which the parties hereby released are legally liable, all of which is denied and disputed by them.

R. at 185. Rowell's counsel, Christina L. Maas, retained the release pending a review of the stipulation for dismissal and order drafted by counsel for American States, Harry J. Jennings.

After reviewing the stipulation and order, Maas contacted her co-counsel, James W. Myers, and advised him that it appeared that the stipulation and order forwarded with the release would result in a dismissal of the entire case. Therefore, on September 25 and October 1, Maas contacted Jennings and advised him that another stipulation and order was necessary to correctly state that only American States and Poulos were dismissed. R. at 147. GEICO's counsel, David Pera, was advised several times by telephone that Maas would be redrafting the stipulation and order to make clear that the claims against Stasiak and GEICO were still pending. R. at 147. In one of these conversations, Pera jokingly indicated to Maas that he would not mind GEICO being released but that she might mind such a result. R. at 147. At no time did Pera raise any objections to the redrafting.

On October 1, 1997, Maas faxed copies of the redrafted stipulation to Jennings and Pera. Maas received no objections when she spoke with either of them on the telephone. Later that day, Maas faxed the executed release and a copy of the stipulation to Jennings. R. at 191. Maas also sent correspondence to Pera, including a copy of the release and the originals of the redrafted stipulation and order. R. at 189. Maas requested that Pera: "review the enclosed, and if same meets with your approval, please sign same and forward the original Stipulation and Order to Mr. Jennings' office for his signature and so that he may cause same to be duly filed with the Court." R. at 189. Pera, on behalf of GEICO, executed the redrafted stipulation sometime between October 1 and October 6, 1997 and then forwarded it to Jennings.[1] The stipulation was then signed by Jennings by October 10 and filed with the

---

1. Only three days after Pera forwarded the signed stipulation to Jennings, Pera deposed Rowell. After the deposition, Maas and Meyers had a conversation with Pera in which Pera advised them that according to his calculation, Rowell had $250,000 remaining on her policy limits and that he would be willing to discuss settlement once the outstanding medicals were obtained. Again, Pera made no objection to the stipulation or order. R. at 149.

trial court on October 14, 1997. The check from American States for Poulos' policy limits was forwarded by Jennings on October 15, 1997.

On November 24, 1997, GEICO filed a motion for summary judgment, seeking to dismiss Rowell's claim pursuant to the release. Thereafter, on December 2, 1997, Rowell filed a motion for extension of time to respond to GEICO's motion for summary judgment, seeking an additional ninety days. The motion explained that "in order to properly respond to the motion, counsel may have to take 2–3 depositions and obtain additional or supplemental affidavits from individuals outside of counsel's immediate control." R. at 64. The same day, the trial court entered an order granting Rowell the ninety-day extension. On December 9, 1997, GEICO filed an objection to Rowell's motion. In her response to GEICO's objection, Rowell further explained the need for the extension as follows:

> Issues in the case include, waiver, estoppel, equitable reliance, & equitable estoppel. To prove the issues it will be necessary to take the deposition of the attorneys who drafted the release as well as to discover any correspondence between counsel for American States and Geico. Counsel has spoken with attorneys for American States and they have agreed to be deposed and to produce documents. Counsel for the plaintiff is unable to set those deposition [sic] until after the holidays due to all counsel's schedule.

R. at 314. The trial court overruled GEICO's objection on December 19 and granted Rowell an additional ninety days to respond. On February 26, 1998, Rowell filed a second motion for extension of time, asserting the need to depose Pera and Pera's refusal to voluntarily appear for deposition. R. at 75. While the record is unclear, it appears that an extension was granted until April 2, 1998. R. at 72, 318. On March 23, 1998, GEICO filed a motion to strike Rowell's first and second motions for extensions of time. Rowell then filed a third motion for extension of

time [2] which was similar to her previous motion, alleging Pera's refusal to be deposed and adding that a power outage and a family vacation caused delay in preparing her response. R. at 317–18. On March 26, 1998, the trial court entered the following order:

> The Court ... grants the plaintiff an amount of time of at least 30 days and/or an amount of time commensurate to obtain the deposition of David Pera and to respond to the motion for summary judgment. The Court further grants the plaintiff the right to take the deposition of David Pera....

R. at 320.

Finally, on April 27, 1998, Rowell filed her response to GEICO's motion for summary judgment. GEICO followed by filing a motion to strike Rowell's response as untimely. A hearing was held on May 4, 1998 and the following day, the trial court denied GEICO's motion to strike and its motion for summary judgment. The court found, in relevant part, that:

> All counsel for the parties stipulated that the dismissal was only applicable to Defendant Poulos and Defendant American States. Thereafter, a release was given to Poulos and American States that specifically released Poulos and American States but contained additional language purporting to release anyone from any claims whatsoever. Defendant Geico knew full well that the release was specifically directed toward Poulos and American States according to the stipulation signed by Geico. Geico's attorney now claims that Geico was also released because of the general language in the release form.
>
> The Court finds there to be no factual issue in this case, and that Geico's claim is without merit.

R. at 309–10. GEICO now appeals.[3]

## DISCUSSION AND DECISION

### I. Extensions of Time

█ GEICO first argues that the trial court erred in granting Rowell's various mo-

---

2. However, we note that Rowell referred to it as "Plaintiff's Second Motion for Extension of Time to Respond to the Defendant Geico's Motion for Summary Judgment." R. at 317.

3. On May 20, 1998, the trial court certified GEICO's petition for interlocutory appeal. We simi-

tions for extension of time to respond to GEICO's motion for summary judgment. Specifically, GEICO relies on Ind. Trial Rule 56(F) and asserts that any requested extension of time based on the need to obtain affidavits or discovery must be supported by affidavit.[4] For this proposition, GEICO directs our attention to *Seufert v. RWB Medical Income Properties I Ltd. Partnership*, 649 N.E.2d 1070, 1073 (Ind.Ct.App.1995), and quotes the following sentence from the case:

> Should the party show by affidavit that he is unable to oppose the motion without discovery, then T.R. 56(F) allows the court to order a continuance.

■ While we agree that a continuance pursuant to T.R. 56(F) requires the filing of an affidavit indicating why the facts necessary to justify opposition are unavailable, GEICO has ignored the next sentence in *Seufert:* "Similarly, T.R. 56(I) allows the court, for cause found, to alter time limits."[5] This rule specifically provides that "[t]he Court, for cause found, *may alter any time limit* set forth in this rule." T.R. 56(I) (emphasis added). As we noted in *Seufert*, the decision of whether to order a continuance or to alter any time limit is within the trial court's discretion. *Seufert*, 649 N.E.2d at 1072. Here, the record reveals that the trial court had ample cause to grant each extension of time. Therefore, we find that the trial court did not abuse its discretion in granting Rowell's motions for extension of time.

## II. Summary Judgment

■ Our standard of review for a denial of summary judgment is well established.

On appeal, we stand in the same position as the trial court. *Harkness v. Hall*, 684 N.E.2d 1156, 1159 (Ind.Ct.App.1997). Summary judgment is only appropriate where the designated materials reveal that there are no genuine issues of material fact and the movant is entitled to judgment as a matter of law. *Burnett v. Cincinnati Ins. Co.*, 690 N.E.2d 747, 749 (Ind.Ct.App.1998), *trans. denied.* When no genuine issues of material fact divide the parties, we need only determine whether the trial court correctly applied the law to the undisputed facts. *Id.* We will affirm the denial of summary judgment if it is sustainable on any legal theory or basis found in the evidentiary matter designated to the trial court. *Indiana Limestone Co. v. Staggs*, 672 N.E.2d 1377, 1388 (Ind.Ct.App. 1996). Moreover, if a contract is unambiguous, its construction is generally a question of law for the court, which makes summary judgment particularly appropriate. *Bastin v. First Indiana Bank*, 694 N.E.2d 740, 746 (Ind.Ct.App.1998).

■ In *Huffman v. Monroe County Community Sch. Corp.*, 588 N.E.2d 1264, 1267 (Ind.1992), our supreme court held that a release should be interpreted according to the standard rules of contract law with the intention of the parties controlling. In *Dobson v. Citizens Gas and Coke Utility*, 634 N.E.2d 1343 (Ind.Ct.App.1994), we applied the rule from *Huffman* to a release which had similar language to that in the instant case.[6] In that case, while finding that the language in the release clearly released "all persons," we stated that:

> A release executed in exchange for proper consideration works to release only those

---

larly granted certification on June 17, 1998, pursuant to Ind. Appellate Rule 4(B)(6).

4.  T.R. 56(F) provides as follows:

> Should it appear from the affidavits of a party opposing the motion that he cannot for reasons stated present by affidavit facts essential to justify his opposition, the court may refuse the application for judgment or may order a continuance to permit affidavits to be obtained or depositions to be taken or discovery to be had or may make such other order as is just.

5.  In *Seufert*, we went on to state:

> We find that T.R. 56 requires an adverse party to respond within 30 days by either (1) filing affidavits showing issues of material fact, (2) filing his own affidavit indicating why the facts necessary to justify his opposition are unavailable, *or* (3) *requesting an extension of time in which to file his response.*
>
> *Id.* (emphasis added).

6.  The release in *Dobson* provided that it released and discharged:

> Reese ... and all other persons, firms or corporations liable or who might be claimed to be liable ... on account of all injuries....
>
> *Dobson*, 634 N.E.2d at 1345.

parties to the agreement unless it is clear from the document that others are to be released as well.

If the language of an instrument is unambiguous, the intent of the parties is determined from its four corners.... A release is plain and unambiguous as to who the parties intended to release where its terms provide that all claims are given up against "all persons" in consequence of an accident. Language which releases "all persons" does just that and is clear as long as no other terms are contradictory.

*Id.* (citations omitted).

GEICO would have us stop our inquiry here and hold that because the language of the release in the instant case is "essentially identical" to that in *Dobson*, all persons, including GEICO, were released. Appellant's Brief at 18. However, we refuse to close our eyes to the stipulation which was signed by GEICO and to counsel's participation therein.[7] There was a time in the practice of law when an attorney's word was his bond.[8] Here, the trial court correctly found that Pera and GEICO "knew full well that the release was specifically directed toward Poulos and Defendant American States according to the stipulation signed by Geico." R. at 309.

The release in *Dobson* is distinguishable because in that case, there was no mention of attorney misconduct or a stipulation for dismissal signed by the party attempting to enforce the release. Initially, we note that the doctrine of judicial estoppel is appropriate here. Judicial estoppel protects the essential integrity of the judicial process by preventing a party and its counsel, from "playing fast and loose" with the courts. *See Shewmaker v. Etter*, 644 N.E.2d 922, 931 (Ind.Ct.App.1994) *adopted*, 659 N.E.2d 1021 (Ind.1995) (discussing judicial estoppel with respect to bankruptcy proceedings). A party may not assume a position in a legal proceeding inconsistent with one previously asserted. *Id.* Here, GEICO signed a stipulation for dismissal which specified that only American States and Poulos were being dismissed, and the trial court entered an order pursuant to that stipulation. Thereafter, GEICO pro-

---

**7.** We note the following provisions of the Rules of Professional Conduct:

A lawyer should use the law's procedures only for legitimate purposes and not to harass or intimidate others. A lawyer should demonstrate respect for the legal system and for those who serve it, including judges, other lawyers and public officials.... [A] lawyer should seek improvement of the law, the administration of justice and the quality of service rendered by the legal profession.

Ind. Professional Conduct Preamble: A Lawyer's Responsibilities.

A lawyer is required to be truthful when dealing with others on a client's behalf.... A misrepresentation can occur if the lawyer incorporates or affirms a statement of another person that the lawyer knows is false. Misrepresentation can also occur by failure to act.

Prof. Cond. R. 4.1 cmt.

It is professional misconduct for a lawyer to:
....
(c) engage in conduct involving dishonesty, fraud, deceit or misrepresentation;
(d) engage in conduct that is prejudicial to the administration of justice;
....

Prof. Cond. R. 8.4.

**8.** Our supreme court confronted attorney misrepresentation in *Fire Ins. Exchange v. Bell*, 643 N.E.2d 310 (Ind.1994), and explained the importance of trustworthiness within our profession:

The reliability and trustworthiness of attorney representations constitute an important component of the efficient administration of justice. A lawyer's representations have long been accorded a particular expectation of honesty and trustworthiness.

Commitment to these values begins with the oath taken by every Indiana lawyer; it is formally embodied in rules of professional conduct ... and it is repeatedly emphasized and reinforced by professional associations and organizations. The Indiana Oath of Attorneys includes the promise that a lawyer will employ "such means only as are consistent with truth." Ind. Admission and Discipline Rule 22.
....

Similarly, the Tenets of Professional Courtesy adopted by the Indianapolis Bar Association declare, "A lawyer should never knowingly deceive another lawyer or the court," and "A lawyer should honor promises or commitments to other lawyers and to the court, and should always act pursuant to the *maxim, 'My word is my bond.'"* ... The International Association of Defense Counsel likewise emphasizes that "[w]e will honor all promises or commitments, whether oral or in writing, and strive to build a reputation for dignity, honesty and integrity."

*Id.* at 312–13 (emphasis in original).

ceeded to take the inconsistent position that it was entitled to summary judgment because the release also applied to it. The trial court was unwilling to accept this type of gamesmanship, and we too will not condone such behavior.

■ Moreover, we are not bound by the four corners of the release agreement because we find that the stipulation was a contemporaneous document. This special rule of contract construction provides that "[i]n the absence of anything to indicate a contrary intention, writings executed at the same time and relating to the same transaction will be construed together in determining the contract." *Salcedo v. Toepp,* 696 N.E.2d 426, 435 (Ind.Ct.App.1998). Additionally, as long as the documents are part of the same transaction, different execution times will not prohibit them from being construed together. *McCae Management Corp. v. Merchants Nat. Bank and Trust Co. of Indianapolis,* 553 N.E.2d 884, 887 (Ind.Ct. App.1990), *trans. denied.* The application of this rule depends on the facts of each particular case. *Ruth v. First Fed. Sav. and Loan Ass'n of LaPorte County,* 492 N.E.2d 1105, 1107 (Ind.Ct.App.1986).

In the instant case, the facts are ripe for the application of the contemporaneous documents rule. Both the release and the stipulation relate to the same transaction: the release of American States and Poulos. Specifically, these documents were initially sent together with the settlement offer to Maas. We recognize that the release was executed prior to the stipulation. However, Maas did not return the release to Jennings until the stipulation was redrafted to specify that only American States and Poulos were being released and was faxed to Jennings and Pera for approval. After receiving no objections to the redrafted stipulation, Maas faxed both documents to Jennings and Pera.[9] The fact that Pera may have waited almost a week to sign the stipulation and mail it to Jennings does not negate the fact that the documents both related to the release and were intended to be contemporaneous. Based on these facts, we find that the contemporaneous documents rule applies, and, therefore, the trial court properly considered the stipulation which made clear that the only American States and Poulos were released.

### III. Sanctions

■ Subsequent to the filing of the briefs in the instant case, GEICO filed a motion for sanctions against Rowell pursuant to T.R. 11(A),[10] contending that Rowell has engaged in a course of conduct for no good purpose other than to obfuscate the issues, delay the proceedings and circumvent the meaning and intent of the Rules of Appellate Procedure. GEICO initially notes that on July 16, 1998, Rowell filed a motion to dismiss this interlocutory appeal, claiming that GEICO's request for certification with this court only referred to the release and failed to notify this court of the stipulation. Specifically, GEICO argues that the motion to dismiss, which was denied by this court on September 29, 1998, was groundless and represented nothing more than a mere recitation of her core argument. Further, GEICO alleges that Rowell has now filed a motion to strike portions of GEICO's brief, and this motion is groundless and an attempt to circumvent the Rules of Appellate Procedure by responding to an appellant's reply brief. While we have denied Rowell's motion to dismiss and now deny her motion to strike, we also deny GEICO's motion to impose sanctions against Rowell.

9. The original executed release and a copy of the stipulation were sent to Jennings. A copy of the release and the original stipulation to be executed by Pera and then Jennings were sent to Pera.

10. The relevant portions of T.R. 11(A) provide as follows:

Every pleading or motion of a party represented by an attorney shall be signed by at least one [1] attorney of record.... The signature of an attorney constitutes a certificate by him that he has read the pleadings; that to the best of his knowledge, information, and belief, there is good ground to support it; and that it is not interposed for delay. If a pleading or motion is ... signed with intent to defeat the purpose of the rule, it may be stricken as a sham and false and the action may proceed as though the pleading had not been served. For a wilful violation of this rule an attorney may be subjected to appropriate disciplinary action.

Furthermore, we find it ironic that GEICO is requesting the imposition of sanctions against Rowell. In light of the actions of GEICO's counsel and pursuant to our authority under App. R. 15(G),[11] we find *sua sponte* that damages should be assessed against GEICO's counsel in the amount of Rowell's appellate attorney fees.[12] *See Catellier v. Depco, Inc.*, 696 N.E.2d 75, 78–80 (Ind.Ct.App.1998) (assessing appellate attorney fees against appellant's counsel for bad faith). Upon remand, the trial court shall determine the appropriate amount of damages to be awarded to Rowell for the defense of this appeal.

## *CONCLUSION*

In light of our resolution of the issues set forth above, we conclude that the trial court did not abuse its discretion in granting Rowell's motions for extension of time, especially considering the behavior of its counsel. Moreover, we find that the trial court properly denied GEICO's motion for summary judgment because the stipulation signed by GEICO specifically provided that only American States and Poulos were released. Therefore, the cause remains pending as to Stasiak and GEICO and, upon remand, the trial court shall calculate and execute the damages assessed by this court against counsel.

Judgment affirmed and cause remanded for further proceedings consistent with this opinion.

GARRARD, J., and ROBB, J., concur.

---

11. App. R. 15(G) provides that:
    If the court on appeal affirms the judgment, damages may be assessed in favor or the appellee not exceeding ten per cent (10%) upon the judgment, in money judgments, and in other cases in the discretion of the court; and the court shall remand such cause for execution.

12. Appellate attorney fees may be awarded by this court when "an appeal is permeated with meritlessness, *bad faith*, frivolity, harassment, vexatiousness, or purpose of delay." *Hyundai Motor Co. v. Stamper*, 651 N.E.2d 803, 810 (Ind. Ct.App.1995) (emphasis added).