ESTATE OF Kelly S. SPRY, Deceased, Joanne S. Spry, Special Administratrix, Appellant–Plaintiff,

v.

GREG & KEN, INC., d/b/a Leiters Ford Tavern, Greg Davis and Ken Reininga, Appellees–Defendants.

No. 25A05–0012–CV–563.

Court of Appeals of Indiana.

June 18, 2001.

Rehearing Denied August 6, 2001.

---

Patrick J. Higgins, Jr., Granger, IN, Attorney for Appellant.

Ted A. Waggoner, Peterson & Waggoner, Rochester, IN, Attorney for Appellees.

## OPINION

SHARPNACK, Chief Judge.

The Estate of Kelly S. Spry ("the Estate") by Special Administratrix Joanne S. Spry appeals the trial court's grant of summary judgment to Greg & Ken, Inc., d/b/a Leiters Ford Tavern; Greg Davis; and Ken Reininga (collectively, "the Tavern"). The Estate raises two issues on appeal, which we consolidate and restate as whether the trial court erred in granting summary judgment to the Tavern. We affirm.[1]

Because we are reviewing the grant of a motion for summary judgment, we view the facts in a light most favorable to the Estate, which was the nonmovant below. On August 23, 1997, at approximately 8:00 p.m., Kelly left Leiters Ford Tavern in a car driven by John W. Taylor. Approximately five minutes later, Taylor's car went off the road, and Kelly was killed in the ensuing accident. James Spry, Kelly's father, was appointed administrator of Kelly's estate. The Estate filed a claim with Taylor's automobile insurer, GRE Insurance Group ("GRE"). Taylor's automobile insurance policy provided coverage for a maximum of $25,000 in bodily injury damages for each person injured in an automobile accident. In addition, Taylor was serving a prison sentence and did not have substantial assets.[2] Therefore, the Estate agreed to settle its claim against Taylor and GRE by signing release of liability form in exchange for the $25,000 provided by the insurance policy. The release of liability contained the following language:

This Indenture Witnesseth that, in consideration of the sum of *TWENTY*

---

1. The Tavern's motion for oral argument is hereby denied.

2. Charges were filed against Taylor for the accident that killed Kelly, and Taylor subsequently pleaded guilty to causing a death while operating a vehicle with a BAC of .10% or more. *See* Ind.Code § 9–30–5–5.

*FIVE THOUSAND* dollars (*$25,000.00* ), receipt whereof is hereby acknowledged, for myself/ourselves and for my/our heirs, personal representatives and assigns, I/we do hereby release and forever discharge *JOHN W. TAYLOR JR.* and any other person, firm or corporation charged or chargeable with responsibility or liability, their heirs, representatives and assigns, from any and all claims, demands, damages, costs, expenses, loss of services, actions and causes of action on account of all personal injury, disability, property damage, loss or damages of any kind already sustained or that I/we may hereafter sustain in consequence of an accident that occurred on or about the *23RD* day of *AUGUST*, in the year *1997*, at or near *ROCHESTER, IN.*

Record, p. 47 (emphasis in original). Upon petition by the Estate, the trial court accepted this settlement agreement and ordered the disbursement of the money to Kelly's beneficiaries and the attorneys.

Subsequently, Joanne Spry, Kelly's widow, was substituted as Special Administratrix of the Estate. After Joanne hired a new attorney to represent the Estate, the Estate filed the present claim against the Tavern for its actions on the day of Kelly's death. The Tavern filed a motion for summary judgment, claiming that the general release form that James signed in the Estate's settlement with Taylor and GRE released the Tavern from any possible claims of liability. The trial court granted the Tavern's motion for summary judgment.

 The sole issue in this appeal is whether the trial court erred in granting summary judgment to the Tavern. When reviewing the grant of a summary judgment, we apply the same standard that the trial court used to evaluate whether the motion for summary judgment should be granted. *Dobson v. Citizens Gas & Coke Util.*, 634 N.E.2d 1343, 1344 (Ind.Ct.App. 1994). Summary judgment is appropriate if "there is no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law." Ind. Trial Rule 56(C). On appeal, we must decide whether there are any genuine issues of material fact and whether the trial court appropriately applied the law to the facts of the case. *Stemm v. Estate of Dunlap*, 717 N.E.2d 971, 975 (Ind.Ct.App. 1999), *reh'g denied.* We affirm the trial court if its decision is sustainable on any basis found in the evidence that was designated to the trial court. *Dobson*, 634 N.E.2d at 1344.

 The Estate claims that the trial court erred in granting summary judgment to the Tavern because the intentions of the Estate and of GRE were to release only Taylor and GRE from future claims and liability arising from the accident that killed Kelly.[3] The Tavern argues that the

---

**3.** Within its argument for this issue, the Estate alleges that there are three questions of fact that should be addressed: 1) whether James signed the release as an individual instead of as administrator of the estate and, therefore, whether the Estate should be bound by the release; 2) whether the Estate signed the release pursuant to court authority; and 3) whether the trial court approved the release form. The Tavern argues that the Estate did not raise these issues below and that therefore the Estate waived these issues for appellate review. The Estate's reply brief

neither mentions these allegations nor points to a place in the record where these issues were raised below. Our review of the record indicates that the Estate not only failed to raise these factual allegations before the trial court, it stated its claims in terms that contradicted these factual allegations. For example, in its response to the Tavern's motion for summary judgment, the Estate claimed that "James Spry, as Administrator of the Estate of Kelly Spry, negotiated a settlement with GRE Insurance Group of his claim...." Rec-

release signed by James bars the Estate's claim against the Tavern.

Nearly a decade ago, our supreme court abrogated the common law rule that the release of one joint tortfeasor released all of the other joint tortfeasors. *See Huffman v. Monroe County Com. Sch. Corp.*, 588 N.E.2d 1264 (Ind.1992). Consequently, the release of Taylor and GRE did not release the Tavern as a matter of law. *See id.* To determine whether the Tavern was released, we must look to the release itself. In *Huffman*, the following standard for reviewing releases was outlined:

A release executed in exchange for proper consideration works to release only those parties to the agreement unless it is clear from the document that others are to be released as well. A release, as with any contract, should be interpreted according to the standard rules of contract law. Therefore, from this point forward, release documents shall be interpreted in the same manner as any other contract document, with the intention of the parties regarding the purpose of the document governing.

*Id.* at 1267.

■■■ One standard rule of contract interpretation is that if the language of an instrument is unambiguous, the intent of the parties is to be determined by reviewing the language contained between the four corners of that instrument. *Dobson*, 634 N.E.2d at 1345. "A contract is ambiguous only if a reasonable person could find its terms susceptible to more than one interpretation." *Id.* Language that releas-

es "all" people is clear unless other terms in the instrument are contradictory. *Compare id.* (involving a release that did not contain contradictory language) *with Huffman*, 588 N.E.2d at 1267 (involving a release that contained contradictory language).

Here, the release provided that the Estate released Taylor "and any other person, firm or corporation charged or chargeable with responsibility or liability, their heirs, representatives and assigns, from any and all claims, demands, damages, costs, expenses, loss of services, actions and causes of action . . . ." Record, p. 47. There is no other language in the release instrument that contradicts the notion that all possible defendants are to be released. *See Huffman*, 588 N.E.2d at 1267. Consequently, the instrument unambiguously released the Tavern from liability. *See Dobson*, 634 N.E.2d at 1345; *Stemm*, 717 N.E.2d at 975–976.

Nevertheless, the Estate asserts that we should reverse the trial court's grant of summary judgment by applying the contemporaneous writing rule, by following public policy, or by reforming the contract. We find none of these arguments compelling.

■■■ The contemporaneous writing rule allows a court to determine the intent of the parties to an agreement by examining documents that were drafted contemporaneously. *GEICO Ins. Co. v. Rowell*, 705 N.E.2d 476, 482 (Ind.Ct.App.1999), *reh'g denied*. In addition to being execut-

---

ord, p. 14. Later in that same document, the Estate acknowledged that the trial court approved settlement of the claim against GRE and Taylor and ordered the administrator, James, to execute the release. Record, p. 19. In addition, we did not find a place in the record where the Estate raised before the trial court its argument that the trial court did not approve the settlement form. Consequently,

the Estate is attempting to raise issues on appeal that it did not raise before the trial court, and those issues are waived for appellate review. *See Greyhound Financial Corp. v. R.L.C., Inc.*, 637 N.E.2d 1325, 1329 n. 3 (Ind. Ct.App.1994) (holding that party could not raise an issue for the first time during appeal of grant of motion for summary judgment).

ed at the same time, the writings must relate "to the same transaction or subject-matter" to be construed together as a contract. *Ruth v. First Fed. Sav. & Loan Ass'n of LaPorte,* 492 N.E.2d 1105, 1107 (Ind.Ct.App.1986) (quoting *Urbanational Developers, Inc. v. Shamrock Eng'g, Inc.,* 175 Ind.App. 416, 435, 372 N.E.2d 742, 754 (1978)). *See also* 17A C.J.S. *Contracts,* § 315, at 337 (1999). Whether this rule should be applied is to be determined by the facts of each individual case. *Ruth,* 492 N.E.2d at 1108.

■■■ Here, the Estate claims that we should construe together as contemporaneous documents the release signed by the Estate, the Estate's petition requesting that the trial court accept the settlement, and the trial court's order accepting the settlement and ordering disbursement of the funds. These three documents were not executed on the same day.[4] However, that fact alone does not prevent us from construing these documents as contemporaneous if the documents were executed at substantially the same time and were part of the same transaction. *Ruth,* 492 N.E.2d at 1108, n. 2. Therefore, we now consider whether these documents were part of the same transaction.

The Estate suggests that we follow *Rowell,* wherein we construed a release and a stipulation as contemporaneous documents. *Rowell,* 705 N.E.2d at 481–482. In *Rowell,* a plaintiff, who intended to release only two of the four defendants she was suing, signed a general release. *Id.* at 478. Before filing the release with the trial court, the plaintiff's attorney realized that the general release released all four defendants, including GEICO, so the attorney drafted a stipulation providing that only two of the defendants were released.

*Id.* The attorney then had all of the parties, including GEICO, sign the stipulation. *Id.* After the stipulation and release were filed with the trial court, GEICO asserted that they were released by the general release that the plaintiff had signed. *Id.* at 479. The trial court denied GEICO's motion for summary judgment. *Id.* After holding that GEICO was judicially estopped from asserting the general liability release because their representative had signed a stipulation agreeing that the release applied only to two other defendants, we noted that the contemporaneous document rule required us to interpret the release in conjunction with the stipulation. *Id.* at 481–482.

Distinctions between the document in *Rowell* and the documents here prohibit us from following *Rowell.* The stipulation in *Rowell* was created and executed by all of the parties to the agreement in order to modify the release. *Id.* at 478. The signature of the GEICO representative on the stipulation was his acknowledgment that the stipulation modified the release. *See id.* Consequently, the release and the stipulation were part of the same transaction: a contract agreeing that some defendants would be released from liability in exchange for money.

Here, we are faced with a release, a petition, and a court order. The release is an agreement between the three parties, specifically a contract whereby all defendants were released from liability in exchange for money. However, the petition and court order are not a part of that transaction. Instead, they are part of a transaction between the Estate and the trial court, to which GRE and Taylor were not parties, wherein the Estate asked for

---

4. The release was executed on May 11, 1999. The petition was executed on April 27, 1999. The order was executed on May 3, 1999.

and the trial court granted permission to accept and disburse the money collected pursuant to the release. Therefore, the trial court did not err in refusing to interpret the three documents together. *See, e.g., Keystone Square Shopping Ctr. Co. v. Marsh Supermarkets, Inc.*, 459 N.E.2d 420, 424 (Ind.Ct.App.1984) (holding that the trial court did not err when it refused to construe lease data summaries as contemporaneous documents with the lease and lease amendment because the language in the summaries conflicted with the language in the lease and lease amendment).

■ Next, the Estate argues that applying the release to bar the Estate's claim against the Tavern is "contrary to the public policies of open courts and promoting settlement of litigation." Appellant's brief, p. 19. We disagree. Even though our enforcement of this release has the effect of closing the court to the Estate's action, we will not allow a general public policy to trump the plain language of this release. If a litigant wishes to settle a claim against some defendants without releasing other defendants, an appropriately drafted release or a general release accompanied by a stipulation signed by all of the parties will allow a litigant to do just that. *See Pelo v. Franklin Coll. of Ind.*, 715 N.E.2d 365, 366–367 (Ind.1999) (holding that the intent of the parties to not release Franklin College was clear from the release that specifically stated that "this release does not release the employer ... believed to be Franklin College...."); *Rowell*, 705 N.E.2d at 481–482.

Moreover, our holding does not discourage others from settling lawsuits. Instead, those who are contemplating settling a claim should be encouraged to do so by the fact that courts of our state will not interpret a contract to mean something other than what its plain language provides. If judges could interpret a release to mean something that is contrary to the plain language because one party intended for it to mean something else, then parties would be discouraged from signing releases because they could not have confidence that a court would enforce the release's plain language. Contrary to the Estate's assertion, its proposed course of action would discourage the settlement of cases and create unnecessary litigation. Consequently, we do not believe that public policy requires us to reverse the trial court's judgment.

■ Finally, the Estate suggests that we should reform the release so that it applies only to Taylor and GRE. In Indiana, courts may reform written contracts only if (1) there has been a mutual mistake, or (2) one party makes a mistake while the other party commits fraud or inequitable conduct. *Plumlee v. Monroe Guar. Ins. Co.*, 655 N.E.2d 350, 356 (Ind. Ct.App.1995), *reh'g denied, trans. denied.* Because the Estate does not allege that a fraud occurred, we turn our analysis to mutual mistakes. A mutual mistake has occurred if "there has been a meeting of the minds, an agreement actually entered into, but the document in its written form does not express what the parties actually intended." *Id.* However, reformations for mistakes are only available if they are mistakes of fact, not if they are mistakes of law. *Gierhart v. Consol. Rail Corp.-Conrail*, 656 N.E.2d 285, 287 (Ind.Ct.App. 1995), *trans. denied.* In addition, "equity should not intervene and courts should not grant reformation where the complaining party failed to read the instrument, or, if he read it, failed to give heed to its plain terms." *Id.*

The plain language of the release that the Estate signed was that "any other person, firm or corporation charged or chargeable with responsibility or liability, their heirs, representatives and assigns"

was released. Record, p. 47. That language is plain, and the Estate's mistake was regarding the effect of the release, not its terms. *See Gierhart,* 656 N.E.2d at 287 (refusing to reform a release when the plaintiffs signed a general release that released a railroad from "all claims," instead of only some claims). Consequently, we may not reform the release to correct the Estate's mistake of law. *See id.* (holding that the court could not reform the release signed by the plaintiffs because their misunderstanding of the plain language of the release was a mistake of law, not a mistake of fact).

For the foregoing reasons, the judgment of the trial court is affirmed.

Affirmed.[5]

KIRSCH, J., and MATTINGLY–MAY, J., concur.

---

5. James was also named as a defendant in the Estate's complaint from which this appeal arose. However, James was not a party to the Tavern's motion for summary judgment that the trial court granted, and he is not a party to this appeal. The implication of our affirmation of the grant of summary judgment on the ground that the general liability clause released all possible defendants from liability for the death of Kelly is that the Estate's claim against James for his actions on August 23, 1997, also would fail because the agreement released all possible persons from liability, which includes James. However, as James is not a party to this appeal, we need not decide whether the fact that James was the person who signed the release on behalf of the Estate would prevent him from asserting the liability release as an affirmative defense or whether the Estate would have a cause of action against James or his attorney under some other theory of recovery.