**Armand MURAT, Appellant–Plaintiff,**

v.

**SOUTH BEND LODGE NO. 235 OF the BENEVOLENT AND PROTECTIVE ORDER OF ELKS OF the UNITED STATES of America and Burkhart Advertising, Inc., Appellees–Defendants.**

No. 71A04–0712–CV–729.

Court of Appeals of Indiana.

Sept. 19, 2008.

Robert J. Palmer, May Oberfell Lorber, Mishawaka, IN, Attorney for Appellant.

John H. Lloyd, IV, Plews Shadley Racher & Braun, LLP, South Bend, IN, Attorney for Appellee.

## OPINION

MAY, Judge.

Armand Murat sought to enjoin the Elks and Burkhart Advertising, Inc. from placing a billboard within an area over which he has an easement for ingress and egress. The trial court issued a temporary restraining order, but later dissolved it and denied Murat's request for a permanent injunction. We affirm.

## FACTS AND PROCEDURAL HISTORY

On March 27, 1964, Clarence and Martha Dockery conveyed to the Elks a strip of land twenty-three feet wide. The Dockerys retained an easement:

> The Grantors reserve unto themselves, and their respective estates, personal representatives, devisees, heirs, successors and assigns, an easement in, over and across said real estate for the purpose of ingress and egress to and from the Grantors' real estate which adjoins the above described real estate on the South; said easement shall run with the land and inure to the benefit of Grantors' said adjoining real estate....

(Appellant's App. at 265.)

The same day, the Dockerys conveyed the easement and the adjoining land to their daughter and son-in-law, Dorothy and Armand Murat. This deed described the easement as follows:

> An easement is hereby granted in favor of the Grantees, their heirs and devisees, in, over and across that certain tract of land twenty-three (23) feet in width, North and South, adjoining the above described real estate on the North

for the purpose of ingress and egress to and from the real estate herein conveyed.

(*Id.* at 264.) Both deeds were notarized by Robert Zimmerman on March 27, 1964.

The property granted to the Murats is bordered by Hickory Road on the east, by the easement on the north, and by property belonging to the Elks on the west. The Murats wanted to build stores on their property, but it did not have access to city sewer at the time. The Elks agreed to purchase the twenty-three foot strip of land for one dollar and to allow the buildings to be connected to its sewage system.

Murat paved a nineteen-foot strip within the easement. Trucks use the easement to gain access to the rear of the stores to make deliveries, pick up trash, and pump grease from a restaurant. The remaining four feet is a grassy area containing bushes. The Elks use the paved strip to gain access to their property from Hickory Road.

The Elks contracted with Burkhart to place a billboard within the twenty-three-foot strip. Initially, they planned to place it in the middle of the paved portion. On May 17, 2007, Murat filed a complaint and sought a temporary restraining order, which was granted the next day. During the proceedings, the Elks and Burkhart decided to place the billboard within the grassy area. The billboard would be supported by a pole twenty-four inches in diameter. On July 20, 2007, after several hearings, the trial court entered findings of fact and conclusions of law. The trial court dissolved the temporary restraining order and denied Murat's request for a permanent injunction.[1]

## DISCUSSION AND DECISION

Murat bore the burden of proof and did not prevail; therefore, he appeals from a negative judgment. *Hopper Resources, Inc. v. Webster*, 878 N.E.2d 418, 422 (Ind. Ct.App.2007), *reh'g denied, trans. denied.*

> When a party appeals from a negative judgment, it must demonstrate that the evidence points unerringly to a conclusion different from that reached by the trial court. Further, when the trial court enters findings of fact and conclusions of law under Indiana Trial Rule 52(A), the reviewing court may only reverse if the findings or conclusions are clearly erroneous. The trial court's judgment is clearly erroneous only if its findings of fact do not support its conclusions or its conclusions do not support its judgment.

*Id.* (citations omitted).

1. *Contemporaneous Document Doctrine*

The deed from the Dockerys to the Elks does not specify the width of the easement reserved by the Dockerys. The trial court's order states:

> The law appears to be settled that where the width, length and location of an easement for ingress and egress have been expressly set forth in an instrument the easement is specific and definite. The expressed terms of the grant or reservation are controlling in such case and considerations of what may be necessary or reasonable to the present

---

1. The trial court's order states Murat "cannot demonstrate a reasonable likelihood of success on the merits." (Appellant's App. at 3(E).) However, the trial court's order also explicitly declined to award Murat a permanent injunction; thus it appears the trial court reached the merits of Murat's claim. We view the trial court's statement that Murat cannot demonstrate a reasonable likelihood of success as surplusage, and we will treat the ruling as one on the merits.

use of the domina[nt] estate are not controlling. If, however, the width, length and location of an easement for ingress and egress are not fixed by terms of the grant or reservation the domina[nt] estate is ordinarily entitled to a way of such width, length and location as is sufficient to afford necessary or reasonable ingress and egress. To sustain a contention that an easement grants the right to use any and all strip [sic] of land, the [movant] must point to language in a deed which clearly and definitely fixes the width of the right of way.

(Appellant's App. at 3(D).) [2]

■■■ Murat concedes the Dockery–Elks deed does not specify the width of the easement. However, the Dockery–Murat deed states the width of the easement is twenty-three feet. Murat argues the deeds should be construed together pursuant to the contemporaneous document doctrine.

This special rule of contract construction provides that "[i]n the absence of anything to indicate a contrary intention, writings executed at the same time and relating to the same transaction will be construed together in determining the contract." ... The application of this rule depends on the facts of each particular case.

GEICO Ins. v. Rowell, 705 N.E.2d 476, 482 (Ind.Ct.App.1999) (citations omitted), reh'g denied.

■■■ Burkhart argues the contemporaneous document doctrine should not apply because the Elks were not a party to the Dockery–Murat deed.[3] Murat, citing cases from other jurisdictions, argues the doctrine may apply even though the parties to the documents are not the same.

This court has been hesitant to apply the doctrine in this situation. See Estate of Spry v. Greg & Ken, Inc., 749 N.E.2d 1269 (Ind.Ct.App.2001), reh'g denied. Kelly Spry left Leiters Ford Tavern with John Taylor. Taylor's car went off the road, and Spry was killed in the accident. Spry's Estate filed a claim with GRE, Taylor's automobile insurer. The Estate settled with GRE for Taylor's policy limits and executed a general release. Later, the Estate filed suit against the Tavern. The Tavern argued the general release barred the Estate's claim. The Estate argued we should consider not only the release, but also the Estate's petition requesting the trial court to accept the settlement and the trial court's order accepting the settlement to find the Estate did not intend to release the Tavern.

We disagreed:

The Estate suggests that we follow Rowell, wherein we construed a release and a stipulation as contemporaneous documents. In Rowell, a plaintiff, who intended to release only two of the four defendants she was suing, signed a gen-

2. For this quote, the order cited "28A C.J.S. Easements § 148, 'Ways by Express Grant or Reservation['], p. 356 [citing Andersen v. Edwards, 625 P.2d 282, 285 (Alaska 1981)]." The 2008 version states:

If the grant or reservation is specific in its terms, it is decisive of the limits of the way.... On the other hand, where a conveyance of a right-of-way does not specifically define it, the general rule as variously stated is that the grantee is entitled to, and only to, such a way as is reasonably neces-

sary and convenient for the purposes for which it was created. In other words, a right-of-way easement created by a conveyance in general terms and without any restrictions on its use is to be construed as broad enough to permit any use that is reasonably connected with the reasonable use of the land to which it is appurtenant. 28A C.J.S. Easements § 198 (2008).

3. The Elks have not filed a brief.

eral release. Before filing the release with the trial court, the plaintiff's attorney realized that the general release released all four defendants, including GEICO, so the attorney drafted a stipulation providing that only two of the defendants were released. The attorney then had all of the parties, including GEICO, sign the stipulation. After the stipulation and release were filed with the trial court, GEICO asserted that they were released by the general release that the plaintiff had signed. The trial court denied GEICO's motion for summary judgment. After holding that GEICO was judicially estopped from asserting the general liability release because their representative had signed a stipulation agreeing that the release applied only to two other defendants, we noted that the contemporaneous document rule required us to interpret the release in conjunction with the stipulation.

Distinctions between the document in *Rowell* and the documents here prohibit us from following *Rowell. The stipulation in* Rowell *was created and executed by all of the parties to the agreement in order to modify the release. The signature of the GEICO representative on the stipulation was his acknowledgment that the stipulation modified the release.* Consequently, the release and the stipulation were part of the same transaction: a contract agreeing that some defendants would be released from liability in exchange for money.

Here, we are faced with a release, a petition, and a court order. The release is an agreement between the three parties, specifically a contract whereby all defendants were released from liability in exchange for money. However, the petition and court order are not a part of that transaction. Instead, they are part of a transaction between the Estate and the trial court, to which GRE and Taylor were not parties, wherein the Estate asked for and the trial court granted permission to accept and disburse the money collected pursuant to the release. Therefore, the trial court did not err in refusing to interpret the three documents together.

*Id.* at 1274–75 (citations omitted) (emphasis added).

■ Application of the contemporaneous document doctrine is determined on a case-by-case basis, *Rowell*, 705 N.E.2d at 482, and Murat has not explained why the Elks should be bound by the Dockery–Murat deed. We believe the doctrine should be applied cautiously when the documents involve different parties. *See Estate of Spry*, 749 N.E.2d at 1274. The Dockery–Elks deed does not reserve an easement of a specific width; yet, when the Dockerys conveyed their easement to the Murats, they purported to set out a specific width. The Dockery–Elks deed does not reference the Dockery–Murat deed, and Murat points to no evidence that the Elks understood the transaction to involve an easement of a specific width. *See* 17A C.J.S. *Contracts* § 315 (1999) ("[S]eparate written agreements between different parties which serve different purposes and which do not refer to each other, are not intended to be interdependent and do not combine to form a unitary contract.").

Furthermore, Murat does not explain why the deeds should be considered a single transaction. The Elks wanted access to Hickory Road and agreed to provide a sewage connection in exchange; it was of no concern to the Elks that the Dockerys chose to immediately convey their interest in the easement to the Murats. Murat has not shown why the contemporaneous document doctrine should apply, and the trial court did not err by declining to find con-

trolling the width set out in the Dockery–Murat deed.

### 2. *Necessary or Reasonable Ingress and Egress*

The Dockery–Elks deed does not specify the width of the easement; therefore, Murat has an easement for necessary or reasonable ingress and egress to his property. 28A C.J.S. *Easements* § 198 (2008). Burkhart argues it may place the sign anywhere within the twenty-three foot strip as long as Murat continues to have ingress and egress to some point of his property. However, Murat has access to his property from multiple points along Hickory Road. Murat uses the easement to gain access to the rear of his property. Deliveries are made behind the stores; that is also where trash is picked up and where grease is pumped from a restaurant on the property. Burkhart makes no argument that this is not a necessary or reasonable use of the easement. Therefore, we conclude Murat is entitled to have an easement sufficiently wide and long to permit trucks to reach the rear of the stores and restaurant.

However, we cannot say the evidence points unerringly to the conclusion that placing the sign in the grassy area will interfere with Murat's reasonable use of the easement.[4] Murat points to his testimony that trucks need "every inch" to maneuver and sometimes brush up against the bushes. (Appellant's App. at 198–99.) However, Murat also testified the grassy area had never been used for ingress and egress:

> Q Mr. Murat, the grassy strip of land with the bushes in it, since that's been in place, it's never been used for the purposes of ingress or egress to your lot.
>
> \*   \*   \*   \*   \*   \*
>
> A No. We just maintain it so there's a buffer. . . .

(*Id.* at 227.) Moreover, some of the photographs Murat offered into evidence show that semi trucks are capable of driving on the paved area without touching the grassy area. (*See, e.g.,* Plaintiff's Exhibits 9–3, 13–3, and 13–4.) Murat also asserted placing the pole in the grassy area would hinder efforts to plow the paved strip when it snows, but he did not explain why a pole twenty-four inches in diameter within a four-foot strip would be more of a hindrance than the bushes that are already there. The trial court did not err by concluding the sign would not interfere with reasonable ingress and egress to Murat's lot and declining to award a permanent injunction.[5]

Affirmed.

VAIDIK, J., and MATHIAS, J., concur.

---

4. Murat argues the trial court's order would permit Burkhart to place the sign in the middle of his easement. However, there is no evidence Burkhart intends to do so; Burkhart sought and obtained a permit to construct the sign in the grassy area.

    "An injunction will not be issued where the applicant cannot demonstrate 'the present existence of an actual threat that the action sought to be enjoined will come about.'" In other words, "injunctive relief may not be used simply to eliminate a possibility of a remote future injury, or a future invasion of rights."
    *Groff v. City of Butler,* 794 N.E.2d 528, 537 (Ind.Ct.App.2003) (citations omitted).

5. Because we reach this conclusion, we need not address the trial court's alternative basis

for denying the injunction—that Murat has an adequate remedy at law.