# FOR PUBLICATION



FILED

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEYS FOR APPELLANT:

**KARL L. MULVANEY**
**THOMAS C. SCHERER**
**WHITNEY L. MOSBY**
Bingham Greenebaum Doll LLP
Indianapolis, Indiana

ATTORNEYS FOR APPELLEES:

**DANIEL J. PAUL**
**STEPHEN K. WATSON**
Williams Barrett & Wilkowski LLP
Greenwood, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| PNC BANK, NATIONAL ASSOCIATION, Successor to NATIONAL CITY BANK, Successor by merger with NATIONAL CITY BANK OF INDIANA, <br><br>     Appellant, <br><br>       vs. <br><br> LA DEVELOPMENT, INC., ANDREW L. ARBUCKLE, ROBERT J. LANE, and INTA, LLC, <br><br>     Appellees, <br><br>       and <br><br> INTA, LLC, <br><br>     Cross-Claim and Counterclaim Appellant, <br><br>       vs. <br><br> PNC BANK, NATIONAL ASSOCIATION, Successor to NATIONAL CITY BANK, | No.   41A01-1107-MF-314 |

Successor by merger with NATIONAL )
CITY BANK OF INDIANA, )
)
    Counterclaim Appellee, )
)
        and )
)
LA DEVELOPMENT, INC., )
)
    Cross-Claim Appellee. )

APPEAL FROM THE JOHNSON SUPERIOR COURT
The Honorable Lance D. Hamner, Judge
Cause No. 41D03-1104-MF-272

**August 6, 2012**

**OPINION – FOR PUBLICATION**

**DARDEN, Senior Judge**

STATEMENT OF THE CASE

PNC, National Association, successor to National City Bank, and successor by merger with National City Bank of Indiana (collectively, "the Bank") appeals the trial court's decision in favor of Cross/Counter Claimant INTA, LLC ("INTA") in an action filed by the Bank against LA Development, Inc. ("LA Development"), Andrew L. Arbuckle ("Arbuckle"), Robert J. Lane ("Lane"), and INTA.[1]

We reverse and remand.

---

[1] This is an interlocutory appeal of right. *See* Indiana Rule of Appellate Procedure 14A(6).

## ISSUE

Whether the trial court abused its discretion in denying PNC's motion for the mandatory appointment of a receiver in a mortgage foreclosure action.

## FACTS

On June 18, 2004, the Bank and LA Development entered into a loan agreement whereby the Bank extended credit to LA Development under three notes. The obligations due to the Bank were secured by (1) a mortgage executed by LA Development against real property known as "Harrison Crossings" and located in Johnson County, Indiana; and (2) a mortgage executed by LA Development against certain real property commonly known as "Kingston Village" and located in Johnson County, Indiana. LA Development contractually agreed to the appointment of a receiver by its execution of the mortgages. As guarantors, Arbuckle and Lane guaranteed all of LA Development's obligations to the Bank.

In the fall of 2008, the notes had been fully advanced and had matured by their express terms. LA Development was in need of additional funds to complete the development of about eighteen acres of partially completed lots in Harrison Crossing. INTA, an Indiana Limited Liability Company, agreed to advance $705,000 to LA Development to pay for infrastructure, to satisfy certain lien claimants, and to complete the development in exchange for the conveyance of twelve lots of its choosing to be platted in Harrison Crossing.

On September 15, 2008, a three-party closing occurred involving LA Development, the Bank, and INTA. The following documents, among others, were executed: (1) a forbearance agreement between LA Development and the Bank; (2) a loan agreement between INTA and LA Development; (3) a mortgage note signed by LA Development in favor of INTA as evidence of the INTA loan; (4) a mortgage signed by LA Development mortgaging and conveying certain parts of Harrison Crossing to INTA; and (5) a subordination agreement between INTA and the Bank.

As to INTA and LA Development, Section 2.4 of the Subordination Agreement provided that when the lots in Harrison Crossing Phase III were platted and ready for sale, INTA would obtain payment by selecting twelve of the approximate thirty-nine lots "located in Harrison Crossings Phase III and as described in the Site Plan attached to the Forbearance Agreement." (App. 119). As to INTA and the Bank, Section 2.2 of the Subordination Agreement provided:

> The foregoing priorities and subordination between the parties shall exist and continue to exist notwithstanding the date, manner, or order of attachment or recording, or the lack thereof of any mortgage granted by [LA Development] to INTA on Harrison Crossing Phase III and the Bank hereby COVENANTS, STIPULATES, and AGREES that all liens, mortgages, encumbrances, security interests, and assignments of every kind and character created under, renewed and extended under or existing by virtue of any mortgage granted to the Bank in or to Harrison Crossing Phase III or any part thereof, are hereby SUBORDINATED AND MADE SECONDARY AND INFERIOR, to the liens, mortgages, encumbrances, security interests, and assignments created under, renewed and extended under or existing by virtue of the INTA Mortgage and related documents securing payment of the INTA Obligations described in Paragraph 2.3.

4

(App. 119).

From September 15, 2008, through May 20, 2010, twelve advances of the INTA loan were requested and disbursed. As of October of 2010, the project inspector reported that almost all of the work for Harrison Crossing was complete—including roads, curbs, sewer, lights and signage—except for platting and recording the plat. Indeed, the lots were never platted.

On April 20, 2011, the Bank filed its "Complaint For Damages, To Foreclose Mortgages, Enforce Guaranties And For Immediate Appointment of a Receiver," against LA Development, Arbuckle, Lane, and INTA. The complaint included four counts: Count I: Action for Damages; Count II: Foreclosure of Mortgages; Count III: Action on the Guaranties; and Count IV: Request for Appointment of a Receiver. In the complaint, the Bank alleged, among other things, that LA Development defaulted on its obligations "by failing to pay off the Notes upon maturity" and by defaulting under the forbearance agreement. (App. 16-17). The Bank claimed that the "the indebtedness under the Notes is immediately due and owing by [LA Development] to the Bank." (App. 17).

On the same date, the Bank filed a separate motion for immediate appointment of a receiver, alleging that LA Development had agreed in the loan documents to the appointment of a receiver[2] and that the appointment was mandatory under Indiana Code

---

[2] A receiver is a "disinterested person appointed by a court . . . for the protection or collection of property that is the subject of diverse claims (for example, because it belongs to a bankrupt or is otherwise being litigated)." BLACK'S LAW DICTIONARY 1296 (8th ed. 2004).

section 32-30-5-1(4).[3]  In its motion, the Bank alleged that the appointment of a receiver was necessary to take all actions necessary to manage and control the partially completed residential development and to prepare the development for sale including, but not limited to, platting the lots and recording a final plat.  In addition, the Bank requested the appointment of a receiver over LA Development under the discretionary provisions of Indiana Code sections 32-30-5-1(5) and (7) because LA Development is insolvent and justice required the appointment of a receiver under the facts and circumstances of the case.

---

[3] Indiana Code section 32-30-5-1 provides in relevant part:

A receiver may be appointed by the court in the following cases:

(4)  In actions in which a mortgagee seeks to foreclose a mortgage.  However, upon motion by the mortgagee, the court shall appoint a receiver if, at the time the motion is filed, the property is not occupied by the owner as the owner's principal residence and:

(A)  it appears that the property is in danger of being lost, removed, or materially injured;

(B)  it appears that the property may not be sufficient to discharge the mortgaged debt;

(C)  either the mortgagor or the owner of the property has agreed in the mortgage or in some other writing to the appointment of a receiver;

(D)  a person not personally liable for the debt secured by the mortgage has, or is entitled to, possession of all or a portion of the property;

(E)  the owner of the property is not personally liable for the debt secured by the mortgage; or

(F)  all or any portion of the property is being, or is intended to be, leased for any purpose.

On May 10, 2011, INTA filed its answer, cross-claim against LA Development, and counter-claim against the Bank for foreclosure of the mortgage on a portion of the residential development. In its cross/counter claim, INTA alleged that the Bank relinquished its right to the appointment of a receiver in the Subordination Agreement.

On May 27, 2011, INTA also filed an objection to the Bank's motion to appoint a receiver. Among other things, INTA alleged that the "Subordination Agreement subordinated, in their entirety, [the Bank's] mortgages to INTA's mortgages." (App. 282). Therefore, "any request for a receiver based upon [the Bank's] mortgages under the mandatory provisions of the Receivership Statute, were subordinated to INTA" and INTA's rights "are superior to any request [the Bank] might make under and pursuant to its mortgages as a result of the terms of the Subordination Agreement." (App. 282-83).

After a hearing on the Bank's motion to appoint a receiver and INTA's response thereto, the trial court denied the Bank's request for appointment of a receiver. This interlocutory appeal ensued.

<u>DECISION</u>

The Bank alleges that the trial court erred in not concluding that appointment of a receiver is mandatory under the law and the facts of this case. The Bank notes that the statutory framework governing the mandatory appointment of receivers is Indiana Code section 32-30-5-1. Pursuant to subsection 4 of Indiana Code section 32-30-5-1, a mortgagee's right to appointment of a receiver in a foreclosure action is mandatory once

7

the general provisions of subsection (4) and any of the further provisions of subsections (A) through (F) are satisfied. *See Citizen's Fin. Servs. V. Innsbrook Country Club, Inc.,* 833 N.E.2d 1045, 1054 (Ind. Ct. App. 2005).

The Bank states that it has satisfied the general provisions of subsection (4) and at least two conditions in subsections (A)-(F). Specifically, it asserts that it has met the requirement of Indiana Code section 32-30-5-1(4)(B), which states that a receiver shall be appointed when "it appears that the property may not be sufficient to discharge the mortgaged debt" and Indiana Code section 32-30-5-1(4)(C), which states that a receiver shall be appointed when "either the mortgagor or the owner of the property has agreed in the mortgage or in some other writing to the appointment of a receiver."

INTA does not dispute that the Bank satisfied all of the general provisions of Indiana Code section 32-30-5-1(4) and the conditions set forth in subsections (B) and (C) of the statute. However, it argues that the Bank relinquished its right to the mandatory appointment of a receiver in the Subordination Agreement.

The primary rule of contract construction is to ascertain and give effect to the parties' mutual intent. *Perfect v. McAndrew*, 798 N.E.2d 470, 479 (Ind. Ct. App. 2003). The parties' intent must be derived from their written expressions within the four corners of the contract. *Id.* Unambiguous contracts must be specifically enforced as written without any additions or deletions by the court. *Id.* However, when the language of a contract is ambiguous or uncertain, its meaning is to be determined by the consideration

8

of extrinsic evidence.  *Id*.  A contract is ambiguous if reasonably intelligent people could find its provisions susceptible to more than one interpretation.  *Id*.

The Bank agrees that the Subordination Agreement unambiguously contemplates the subordination of "liens" and "priorities"; however, it does not agree that the agreement subordinates all of its rights or remedies.  The Bank points to the wording of the key provisions of the Subordination Agreement in support of its argument.  In Paragraph 2.1, the agreement states that the bank mortgages "are and shall be subject to, subordinate and junior, as a second priority mortgage to the first priority lien of the INTA Mortgage . . . ."  (App. 119).  In Paragraph 2.2, the agreement states that the Bank agrees that "all liens, mortgages, encumbrances, security interests, and assignments . . . are hereby expressly SUBORDINATED AND MADE SECONDARY AND INFERIOR . . . ."  *Id.*  In paragraph 2.3, the agreement states that the "mortgage liens granted to the Bank are and shall be subordinate . . . ."  *Id*.

INTA, on the other hand, argues that the Subordination Agreement unambiguously deprives the Bank of all of its rights and remedies derived from the mortgages and other loan documents.  INTA emphasizes that Paragraph 2.2 of the Subordination Agreement lists "liens" and "mortgages" separately and that a reasonable reading of the paragraph leads to the conclusion that "mortgages" represents something more than "liens."

9

The interpretations by both parties are reasonable. While Paragraph 2.2 can be read to indicate that the "mortgages" subordinated are something other than liens (possibly including the rights and remedies that are consonant with mortgages), Paragraph 2.3 specifically refers to "mortgage liens" (plausibly indicating that the mortgage liens, and not the rights and remedies thereunder, are subordinated). In short, the Subordination Agreement is ambiguous.

In construing the Subordination Agreement, we may turn to the writings executed at the same time and relating to the same transaction to ascertain the parties' intent. *Geico Ins. Co. v. Rowell*, 705 N.E.2d 476, 482 (Ind. Ct. App. 1999). Absent contractual language indicating that the documents are unrelated, the instruments are construed together. *Id*. At 482.

Here, the intent of the parties is demonstrated when the Subordination Agreement is construed together with the other September 15, 2008 closing documents. The Forbearance Agreement specifically provides that the Bank "is entitled to take any and all action and exercise all rights and remedies granted to it under the Loan Documents by applicable law." (App. 180). The Forbearance agreement also provides that "the Bank expressly reserves and shall retain all rights, claims, remedies, actions, and causes of action in connection with (A) the Obligations or the Loan Documents; and (B) any actions or failure by [LA Development] either before or after the execution of this Agreement." (App. 183). A reading that the Bank subordinated all of its default rights

and remedies in the mortgages by executing the Subordination Agreement—as argued by INTA—cannot be reconciled with the language in the Forbearance Agreement signed on the same date and at the same closing as the Subordination Agreement.

Furthermore, the Bank's default rights and remedies are not solely located in the mortgages. The Bank's loan agreement, for example, authorizes the Bank to foreclose its Harrison Crossing mortgage and to "take over and complete construction of [Harrison Crossing] upon an event of default." (App. 45). The Subordination Agreement expressly references the Bank's loan agreement and loan documents; however, it subordinates only "the Bank's Mortgages." (App. 117-19). If the parties had intended to subordinate all of the Bank's default rights and remedies to INTA, then the Subordination Agreement would have included specific language listing all of the rights and remedies of the Bank in each of its loan documents, including the mortgages. The express limitation to "the Bank's Mortgages" supports the conclusion that the subordination contemplated by the parties was simply a lien subordination and not a subordination of all rights and remedies.

In addition, the parties' intention not to subordinate all rights and remedies is demonstrated by the extrinsic evidence. The Bank has elected to foreclose on Harrison Crossing, an action that INTA concedes is authorized. If the Bank waived all of its enforcement rights and remedies under the mortgages by executing the Subordination Agreement, then the right to foreclose on Harrison Crossing would be included. Either the Bank subordinated all of its enforcement rights and remedies in the mortgages or it

11

did not.  INTA cannot pick and choose which rights and remedies the Bank subordinated to support its argument.

Our construction of the Subordination Agreement emphasizes the necessity of using specific language to limit rights and remedies of the junior creditor.  As one commentator has stated:

> A lien subordination agreement should prohibit the junior creditor from enforcing its subordinated rights in the collateral or in any other way interfering with the senior creditor's liens in the collateral until the senior debt is paid in full.  This prohibition will permit the senior creditor to control any liquidation of the collateral and also the timing of that liquidation.  Despite being subordinated to senior liens, a junior creditor has rights that may be burdensome to the senior creditor.  For example, a junior creditor could commence mortgage foreclosure of the common collateral on the debtor's default.  Despite the senior creditor's higher priority, the timing of the foreclosure may not be in the senior creditor's best interests.  Consequently, the senior creditor should require that the junior creditor waive its rights to marshal assets and agree to postpone any enforcement rights that it may have against the collateral.

Mears, Patrick E., *"Who's On First? Negotiating Debt and Lien Subordination Agreements in Real Estate Transactions,"* 13 Prob. & Prop. 18, 22-23 (1999).

Based upon our construction of the loan documents and our interpretation of the extrinsic evidence, we must conclude that the Bank did not relinquish all of its rights and remedies in the Subordination Agreement.  Because the Bank has shown that the requisite provisions of Indiana Code section 32-30-5-1 have been satisfied, and the Bank did not

12

relinquish its mandatory right to the appointment of a receiver, we conclude that the trial court's order is erroneous.[4]

## CONCLUSION

We reverse and remand with instructions that the trial court vacate its order and grant the Bank's request for the appointment of a receiver.

Reversed and remanded.

MAY, J., and CRONE, J., concur.

---

[4] Because we conclude that the Bank was entitled to the mandatory appointment of a receiver under Indiana Code section 32-30-5-1(4), we do not address the issue of whether an appointment was proper under the discretionary appointment provisions of Indiana Code 32-30-5-1(5) and (7).