**Maria V. CRUZ, et al., Plaintiffs,**

v.

**AMERICAN AIRLINES, Defendant.**

**No. CIV. A. 96–2817(CKK).**

United States District Court, District of Columbia.

July 3, 2001.

Leonard Norman Bebchick, Washington, DC, for Plaintiff.

Wayne Allen Schrader, Gibson, Dunn & Crutcher, L.L.P., Washington, DC, Carroll Edward Dubuc, John E. Gagliano, Cohen, Gettings & Dunham, P.C., Arlington, VA, for Defendant.

## MEMORANDUM OPINION

KOLLAR–KOTELLY, District Judge.

In this prospective class action, several airline passengers allege that Defendant American Airlines ("American") is liable for the full value of bags lost on international flights and that American acted unlawfully in refusing to process lost baggage claims accordingly. Presently before the Court are the parties' cross motions for summary judgment and Plaintiffs' motion for class certification. Upon consideration of the pleadings [1] and the applicable law, the Court shall grant American's motion for summary judgment in part and deny it in part, grant Plaintiffs' cross motion for summary judgment in part and deny it in part, and deny Plaintiffs' motion for class certification without prejudice.

## I. BACKGROUND

Plaintiffs in this suit fall into two separate camps that pursue separate counts against American. While the root is the same for each claim—American lost bags that Plaintiffs checked onto international flights—the precise factual predicates for the two separate counts differ, as do the corresponding requests for relief. Therefore, the Court' recitation of the facts is bifurcated between the two plaintiff groups.

### A. Cruz Plaintiffs

Maria Cruz, Beato Cruz, Gustavo Cruz, Yovary Polanco, and Joaquin Rodriguez (the "Cruz Plaintiffs") [2] traveled from Washington, DC, to the Dominican Repub-

---

**1.** The Court has considered the following pleadings: American's Motion for Summary Judgment; Plaintiffs' Cross Motion for Summary Judgment (which includes their opposition to American's motion); American's Memorandum of Points and Authorities in Opposition to Plaintiffs' Cross Motion for Summary Judgment; American's Reply Memorandum of Points and Authorities in Support of its Motion for Summary Judgment; Plaintiffs' Reply in Support of its Cross Motion for Summary Judgment; Plaintiffs' Notice of Pertinent Authority; American's Response to Plaintiffs' Notice of Pertinent Authority; Plaintiffs' Motion for Class Certification; Amendment to Plaintiffs' Motion for Class Certification; American's Memorandum of Points and Authorities in Opposition to Plaintiffs' Motion for Class Certification; and Plaintiffs' Reply in Support of Motion for Class Certification.

**2.** Maria Cruz brings this action on behalf of Gustavo Cruz and Joaquin Rodriguez, both of whom are minors. Likewise, Yovary Polanco is a minor, and Sandra Maria Cruz brings this action on his behalf.

lic on an American Airlines flight in December 1995. *See* American's Statement of Material Facts as to Which There is No Genuine Issue ¶ 1 [hereinafter "Def.'s Stmt."]. While American weighed several of the Cruz Plaintiffs bags at check-in and required the Cruz Plaintiffs to pay overweight charges for three of them, airline staff neglected to write the bags' weight on the baggage claim stubs. *See* Oct. 24, 1997, Mem. Op. at 2–3. Upon arrival in Santo Domingo, the Cruz Plaintiffs discovered that five of their checked bags were missing, and Maria Cruz reported the loss by filing a property report claim. *See* Def.'s Stmt. ¶ 2. Subsequently, each of the Cruz Plaintiffs submitted a Statement of Property Loss, frequently referred to as a "Form OP–124," in which they asserted that, in aggregate, the lost bags and their contents were worth approximately $15,000. *See id.* ¶ 3.

Under American's internal "30–Day Rule" in effect at that time, the airline generally refused to settle claims that were not filed within thirty days of a loss. In accordance with this Rule, American originally refused to voluntarily compensate the Cruz Plaintiffs for their lost bags because they had failed to submit their OP–124 forms within thirty days. *See id.* ¶ 4. Plaintiffs subsequently commenced this litigation asserting that American is liable for the fair value of the lost bags under the Warsaw Convention.[3]

In a Memorandum Opinion issued on October 24, 1997, the Court determined that the Article 22(2) of the Warsaw Convention limited American's liability for the lost bags. *See* Oct. 24, 1997, Mem. Op. at 16. While Plaintiffs argued that American's failure to record the weight of the bags at check-in precluded the airline from benefitting from the limitation, the Court found that the liability caps still applied, and it entered judgment in favor of American. *See id.* On subsequent appeal, the United States Court of Appeals for the District of Columbia Circuit addressed the availability of liability caps in these circumstances and considered whether Montreal Protocol 4,[4] ratified after this Court's October 1997 opinion, impacted the analysis. *See Cruz v. Am. Airlines, Inc.,* 193 F.3d 526 (D.C.Cir.1999). Concluding that the Warsaw Convention offers no protection for such carriers and that Montreal Protocol 4 does not have retroactive effect, the circuit court vacated this Court's earlier entry of judgment and remanded the case. *See id.* at 530, 532.

Following the issuance of the circuit court's opinion, the Plaintiffs prepared a Second Amended Complaint. In Count One, the Cruz Plaintiffs seek (1) a declaration that American's 30–Day Rule is unlawful, (2) an injunction barring American from "publishing, applying or enforcing" the Rule, (3) a declaration that the Cruz Plaintiffs are entitled to compensation for their lost bags, (4) a declaration of "the lawful measure of [American]'s liability to the class members as compensation," and

---

**3.** Convention for the Unification of Certain Rules Relating to International Transportation By Air, Oct. 12, 1929, 49 Stat. 3000, T.S. No. 876, note following 49 U.S.C. § 40105 (1997).

**4.** The Protocol is formally titled "Montreal Protocol No. 4 to Amend the Convention for the Unification of Certain Rules Relating to International Carriage By Air." It entered into force in the United States on March 4, 1999, and it is reprinted in Senate Report 105–20 at pages 21–32. Article 4 of the Protocol "substantially reduces the number of entries required on each baggage check, [thereby] clear[ing] the way for more efficient check-in procedures." S.REP. No. 105–20, at 9. Notably, Article 4 of the Montreal Protocol eliminates the requirement that airlines record the weight of each checked bag. *See id.* at 22.

(5) compensatory damages in an amount equal to the fair value of the lost baggage or, when appropriate, "the amount which results from multiplying $9.07/lb. by the 'deemed weight' " of the lost bag. *See* 2nd Compl., Wherefore Clause following ¶ 19.

### B. Count Two Plaintiffs

Like the Cruz Plaintiffs, Beato Cruz[5] and Lawrence and Jo Ann Benken (the "Count Two Plaintiffs") lost property on flights operated by American. After arriving at John F. Kennedy Airport in New York after a January 1997 flight from the Dominican Republic, Beato Cruz discovered that his checked bag had been damaged and that its contents were missing. *See* Def.'s Stmt. ¶ 6. The day after discovering the loss, Beato Cruz submitted an OP–124 form to American at Washington Reagan National Airport in which he estimated the value of the lost and damaged property at $3,890. *See* Decl. of Debbie David, Manager for American Airlines' Central Baggage Service [hereinafter "David Dec."], Ex. B at A001021 (OP–124). At the time he submitted the form, American provided Beato Cruz with a $100 travel voucher, and he affixed his signature next to a statement that provided as follows:

> Customer Receipt and Release: The above sum [$100 travel voucher] received from American Airlines is in full satisfaction of all claims, liabilities, and demands that I may have against said company.

David Decl., Ex. N (Baggage Report and Release). Subsequently, American sent Beato Cruz a letter explaining that its liability for such losses is limited to $9.07 per pound up to a maximum of seventy pounds under the Warsaw Convention. *See* Pls.' Consolidated P. & A. in Opp'n to Def.'s Mot. for Summ. J. & in Supp. of Pls.' Cross Mot. for Summ. J. [hereinafter "Pls.' Mem."], Ex. 15 at 32–33 (B. Cruz Depo.); *see also id.*, Ex. 3 (sample letters). In keeping with that representation, American also sent Beato Cruz a check for $634.90 as full compensation for his bag in accordance with the liability limitation. Beato Cruz endorsed the check beneath a statement that, in pertinent part, provided that "[b]y endorsement or deposit of this check I(we) hereby release American Airlines ... from all claims arising in connection with the loss, damage or delay of my belongings." *Id.*, Ex. O (check and endorsement).[6] At the time he endorsed the check, Beato Cruz believed that he could pursue claims against American for additional compensation, notwithstanding American's representations regarding its limited liability. *See* Decl. of Jonathan K. Tycko [hereinafter "Tycko Decl."], Ex. A at 43–44 (B. Cruz Depo.).

Lawrence and Jo Ann Benken flew on American Airlines from Buenos Aires, Argentina, to John F. Kennedy Airport on January 15, 1999. *See* Def.'s Stmt. ¶ 11. In New York, they took a bus to LaGuardia Airport and then flew on to Indianapolis by way of Chicago. *See id.* The Benkens' four checked bags arrived safely in New York, but they did not arrive in Indianapolis. *See id.* ¶¶ 11–12. Two of the four bags were delivered to the Benkens' home a day late, and the other two were never recovered. *See id.* ¶ 12. The Benkens submitted two OP–124 forms in which they asserted that, in aggregate, the lost bags and their contents were worth $7,360. *See id.* ¶ 12; David Decl., Ex. C at A001033, A001038 (OP–124s).

---

**5.** As noted, Beato Cruz also seeks relief under Count One.

**6.** While the copy of the check provided as an exhibit to Ms. David's declaration is blurry and essentially illegible, Plaintiffs have not asserted that American has inaccurately represented the document's contents.

On April 12, 1999, American sent Lawrence Benken a letter stating that its "liability is limited to $9.07 per pound, up to a maximum allowable weight of 70 pounds, or $634.90 per bag." Pls.' Cross–Mot. for Summ. J., Ex. 3 at 2 (April 12, 1999, letter). At the same time, American issued Lawrence Benken a check for $1269.80, the amount recoverable under the liability cap for two lost bags. *See* Def.'s Stmt. ¶ 13. With her husband's approval, Jo Ann Benken endorsed the check below a release statement identical to the statement that appeared on the check that Beato Cruz endorsed. *See id.* ¶¶ 13–14. Prior to Jo Ann Benken's endorsement of the check, Lawrence Benken consulted an attorney and reached the conclusion that the Warsaw Convention did not definitively limit American's liability in these circumstances. *See id.* ¶ 14; Tycko Decl., Ex. B at 67, 77–78, 80–81 (Lawrence Benken Depo.). Nonetheless, he ultimately decided to allow his wife to endorse the check in order to "get it out of the way" and to avoid the annoyance and "hassle" of bringing suit against the airline. *See* Def.'s Stmt. ¶ 14; Tycko Decl., Ex. B at 77–78, 80–81.

In Count Two of the Second Amended Complaint, Beato Cruz and the Benkens seek (1) a declaration that American's reliance on liability limitations was unlawful in these circumstances, (2) a declaration of "the lawful measure of [American]'s liability to the class members as compensation," and (3) compensatory damages in an amount equal to the fair value of the lost baggage, less any funds already provided in an effort to settle the claims. *See* 2nd Compl., Wherefore Clause following ¶ 24.

## II. DISCUSSION

### A. *Sequence of Decision*

Three separate motions are currently pending before the Court. First, Plaintiffs have filed a motion for class certification in which they ask the Court to approve two separate plaintiff classes. Second, American has filed a motion for summary judgment with respect to all Plaintiffs and all claims. Third, Plaintiffs have submitted a cross-motion for partial summary judgment on each of their claims.

▪ Faced with this series of motions, the Court's first task is to determine the proper order in which to address them. Observing that Rule 23(c)(1) of the Federal Rule of Civil Procedure directs courts to resolve class certification motions "[a]s soon as practicable after the commencement of an action," Fed.R.Civ.P. 23(c)(1), Plaintiffs urge the Court to consider their certification motion first. *See* Pls.' Mem at 1–2. In support of this position, Plaintiffs refer the Court to *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 94 S.Ct. 2140, 40 L.Ed.2d 732 (1974), in which the Supreme Court admonished that "nothing in either the language or history of Rule 23 … gives a court any authority to conduct a preliminary hearing on the merits of a suit in order to determine whether it may be maintained as a class action." *Id.* at 177, 94 S.Ct. 2140.

While the quoted portion of the *Eisen* decision properly describes a rule of law applicable to many nascent class actions, it does not govern the present situation. Unlike the district court in *Eisen,* this Court does not propose to investigate the merits of the case merely in order to ascertain the propriety of class certification. Rather, the parties have filed cross motions for summary judgment that require the Court's investigation of the merits irrespective of the separate motion for class certification. In a decision issued more than twenty years after *Eisen,* the United States Court of Appeals for the Seventh

Circuit explained that courts may, in their discretion, assess motions for summary judgment prior to motions for class certification. The Seventh Circuit reasoned as follows:

It is true that Rule 23(c)(1) of the civil rules requires certification as soon as practicable, which will usually be before the case is ripe for summary judgment.... But "usually" is not "always," and "practicable" allows for wiggle room. Class actions are expensive to defend. One way to try to knock one off at low cost is to seek summary judgment before the suit is certified as a class action. A decision that the claim of the named plaintiffs lacks merit ordinarily, though not invariably, ... disqualifies the named plaintiffs as proper class representatives. The effect is to moot the question whether to certify the suit as a class action unless the lawyers for the class manage to find another representative.

*Cowen v. Bank United of Texas*, 70 F.3d 937, 941 (7th Cir.1995); *see also Christensen v. Kiewit–Murdock Inv. Corp.*, 815 F.2d 206, 214 (2d Cir.1987) (holding that a district court has discretion to decide a motion for summary judgment before ruling on a plaintiff's motion to certify a lawsuit as a class action); *Hyman v. First Union Corp.*, 982 F.Supp. 8, 10–11 (D.D.C. 1997) (determining that the language of Rule 23 "give[s] district court judges great discretion in determining the appropriate timing" for ruling on pending motions).

■ Thus, a district court operates with discretion when determining whether to consider a motion for summary judgment prior to a motion for class certification. If the resolution of the summary judgment motion may eliminate the need to consider the certification motion *ab initio*, the court's interest in preserving judicial resources, as well as the resources of the

litigants, counsels in favor of addressing the summary judgment motion first. In this case, the Court finds that its resolution of the pending cross motions for summary judgment may indeed render the class certification motion moot. · Accordingly, the Court turns first to the parties' cross motions for summary judgment.

### B. Standard

Rule 56(c) of the Federal Rules of Civil Procedure requires a court to grant judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any. show that the moving party is entitled to a judgment as a matter of law." Fed. R.Civ.P. 56(c); *see also Tao v. Freeh*, 27 F.3d 635, 638 (D.C.Cir.1994). Although the court should draw all inferences from the supporting records submitted by the nonmoving party, the mere existence of a factual dispute, by itself, is not sufficient to bar summary judgment. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). The adverse party's pleadings must evince the existence of a genuine issue of material fact. *See id.* at 247–48.

To be material, the factual assertion must be capable of affecting the substantive outcome of the litigation; to be genuine, the issue must be supported by sufficient admissible evidence such that a reasonable trier-of-fact could find for the nonmoving party. *See id.; Laningham v. United States Navy*, 813 F.2d 1236, 1242–43 (D.C.Cir.1987). Mere allegations or denials in the adverse party's pleadings are insufficient to defeat an otherwise proper motion for summary judgment. Rather, the nonmoving party bears the affirmative duty to present, by affidavits or other means, specific facts showing that there is a genuine issue for trial. *See id.* at 1248–49. The adverse

party must do more than simply "show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986).

## C. Cross Motions for Summary Judgment

In their pending cross motions, American and Plaintiffs both seek judgment with regard to each claim presented by all Plaintiffs in each of the separate counts. The Court first addresses the parties' dispositive motions with regard to claims raised by the Count Two Plaintiffs and then turns to the Cruz Plaintiffs' claims.

### 1. Count Two Plaintiffs

With regard to the Count Two Plaintiffs, who seek lost baggage compensation beyond the amounts they have already accepted, American argues that Beato Cruz and the Benkens have executed contractual releases in exchange for payment. *See* Def.'s Mot. at 12. Noting that public policy favors strict enforcement of settlement agreements, American asserts that any further claims stemming from the lost bags have been extinguished. *See id.* at 12–13. While effectively conceding that they signed the releases, Plaintiffs argue that the Court should set them aside on the grounds that they were obtained only by virtue of mistake and misrepresentation. *See* Pls.' Reply at 4–5.[7]

---

7. The parties disagree about whether American's offer of the checks and the Count Two Plaintiffs' acceptance of them also amount to an accord and satisfaction that fully extinguishes the claims. *See* Def.'s Mot. for Summ. J. at 14–15; Pls.' Mem. at 8–12. In light of the parties' agreement with respect to contractual release, however, the Court finds that it need not determine whether or not there has been an accord and satisfaction. The Court reaches this conclusion upon observing that any mistake or misrepresentation

The Court's first task in assessing the challenged releases is determining which jurisdiction's law applies. American contends that the law of Maryland, Virginia, and Indiana governs the question because the Count Two Plaintiffs executed their releases in those jurisdictions. *See* Def.'s Mot. at 12–13 n.7. Plaintiffs, on the other hand, argue that federal law applies because the releases at issue pertain to a right afforded by a federal treaty. *See* Pls.' Mem. at 6. A review of the applicable authorities demonstrates that American's position is the correct one.

■ Preliminarily, the Court observes that in Warsaw Convention cases, "a federal choice of law rule is necessary" to determine what substantive law to apply. *See In re Korean Air Lines Disaster*, 935 F.Supp. 10, 12–13 (D.D.C.1996); *see also Bickel v. Korean Air Lines Co.*, 83 F.3d 127, 130–31 (6th Cir.1996). Because there is no "established body of federal choice of law rules, courts have looked to the Restatement (Second) of Conflict of Laws . . . as 'a source of general choice of law principles.'" *Korean Air Lines Disaster*, 935 F.Supp. at 13 (quoting *Bickel*, 83 F.3d at 130–31). Section 188 of the Restatement, which governs situations like this one in which the parties have not agreed to apply the law of a particular jurisdiction, instructs courts to apply "the local law of the state which . . . has the most significant relationship to the transaction and the par-

---

that might require the rescission of the release would also require rescission of an accord and satisfaction. Thus, if there has been no mistake or misrepresentation, the release stands, and the Count Two Plaintiffs claims have been extinguished regardless of the validity of any accord and satisfaction. Likewise, if the parties' dealings were tainted by mistake or misrepresentation, then there has been no binding settlement of claims, regardless of whether American can establish the primary elements of accord and satisfaction.

ties." RESTATEMENT (SECOND) OF CONFLICT OF LAWS § 188(I) (1971). Sections 201 and 212 of the Restatement expressly direct courts to apply this choice of law rule when assessing questions of mistake, misrepresentation, and release. *See id.* §§ 201, 212.

■ In its motion, American urges this Court to apply the law of Maryland, Virginia, and Indiana. Noting that "the respective plaintiffs entered into the releases in Maryland, Virginia, and Indiana, and they live in Maryland and Indiana," American asserts that "these states have the most significant relationship both to the transaction and to the parties." *See* Def.'s Mot. at 12–13 n.7. The Court agrees. Observing that the Count Two Plaintiffs' have clear connections with these jurisdictions, that they lack comparable contacts with any other jurisdiction, and that Plaintiffs have neglected to argue that they bear closer connections elsewhere, the Court finds that the substantive law of these states applies to its analysis of the contractual releases.

The Court's reasoning in this regard finds support in *Zicherman v. Korean Air Lines Co.,* 516 U.S. 217, 116 S.Ct. 629, 133 L.Ed.2d 596 (1996), in which the Supreme Court considered choice of law under the Warsaw Convention and determined that federal substantive law applies only if a particular statute addresses the matter in question. Specifically, the Court held that, in the absence of any provisions to the contrary in the Convention itself or in subsequent statutes implementing the Convention, courts should apply "the law that would govern in absence of the Warsaw Convention." *Id.* at 229, 116 S.Ct. 629. While acknowledging that uniform federal substantive law could prove valuable, the Court determined that such uniformity is not "feasible" in these circumstances. *See id.* at 230–31, 116 S.Ct. 629.

("The Convention neither adopted any uniform rule of its own nor authorized national courts to pursue uniformity in derogation of otherwise applicable law.") Accordingly, the Court recognized that state substantive law applies to actions brought under the Convention unless another federal statute provides a cause of action. *See id.* at 230, 116 S.Ct. 629.

■ Under the law of Virginia, Maryland, and Indiana, a party seeking to overturn a written contractual instrument must satisfy rather strident evidentiary standards. In Virginia, a party must present "clear, cogent, and convincing evidence" before a court will set aside a contractual release. *Nationwide Mut. Ins. Co. v. Muncy,* 217 Va. 916, 234 S.E.2d 70, 72 (Va.1977). Under Maryland law, "he who would set aside a written contractual instrument must go beyond offering a preponderance of proof and meet the stringent requirement of producing evidence that is clear, precise and convincing to the point of reasonable indubitability." *Peters v. Butler,* 253 Md. 7, 251 A.2d 600, 602 (Md.1969). Finally, under the law of Indiana, "to succeed in a reformation action a party must show either mutual mistake or fraud by clear and convincing evidence." *Estate of Reasor v. Putnam County,* 635 N.E.2d 153, 160 (Ind.1994). Applying these standards to Plaintiffs' assertions of mistake and misrepresentation, the Court finds that there is no genuine issue of material fact regarding the validity of the releases and, accordingly, that the Count Two Plaintiffs' claims have been extinguished.

*a. Misrepresentation*

In their cross motion for summary judgment, Plaintiffs argue that the contractual releases are invalid because they resulted from American's faulty representation that its liability was capped under the Warsaw

Convention. *See* Pls.' Mem. at 19. American rejects Plaintiffs' line of reasoning, arguing that an alleged misrepresentation regarding the "state of the law" cannot form the basis for a claim of misrepresentation, especially where, as here, the law in question was unsettled at the time of the alleged misrepresentation. *See* Def.'s Reply at 8.

To rescind a contractual instrument because of an alleged misrepresentation under the law of Maryland, Virginia, and Indiana, a plaintiff must generally demonstrate that the defendant made a material and false representation regarding a pertinent fact, that the defendant knew that the representation was false or acted in reckless disregard of its truth, that the plaintiff relied on the false representation, and that the plaintiff was injured as a result. *See, e.g., Prall v. Indiana Nat. Bank,* 627 N.E.2d 1374, 1378 (Ind.Ct.App.1994); *Kalb v. Vega,* 56 Md. App. 653, 468 A.2d 676, 681 (Md.Ct. Spec.App.1983); *Metrocall of Delaware, Inc. v. Continental Cellular Corp.,* 246 Va. 365, 437 S.E.2d 189, 193 (Va.1993). Maryland law, unlike the law of Virginia or Indiana, allows for rescission in some circumstances even in the absence of any "wrongful conduct" on the part of the defendant. *See Ellerin v. Fairfax Sav.,* 337 Md. 216, 652 A.2d 1117, 1126–27 (Md. 1995). Nonetheless, Maryland courts, like the courts of Virginia and Indiana, will only set aside a contractual instrument if a plaintiff demonstrates that it relied on the misrepresentation in question. *See id.*

The Count Two Plaintiffs' claims of misrepresentation in this case fail for precisely this reason. That is, Plaintiffs are simply unable to overcome the uncontroverted record evidence demonstrating that Beato Cruz and the Benkens *did not* rely on American's representations regarding its liability limitations. To the contrary, the Count Two Plaintiffs have testified in depositions that, notwithstanding American's statements regarding limited liability, they believed they would be able to obtain additional compensation beyond the amounts that American originally tendered. *See* Tycko Decl., Ex. A at 42–43 (B. Cruz Depo.) (testifying that his wife consulted with counsel before he cashed American's check and that he believed he would be able to recover additional funds); Ex. B. at 77–78, 80–81 (L. Benken Depo.) (testifying that he thought he could have recovered additional funds from American, but that he was deterred by the prospect of litigation).[8] Thus, even if American's state-

---

**8.** In its Statement of Material Facts as to Which There is No Genuine Dispute, American describes the circumstances in which Beato Cruz and Benkens executed the releases in question in exchange for payment. *See* American's Statement ¶¶ 6–15. Notably, in their corresponding Statement of Genuine Issues, Plaintiffs neglect to challenge American's description of these events. While Plaintiffs summarily state that the Count Two Plaintiffs relied on American's representations, they fail to refer the Court to record evidence that actually supports such a conclusory assertion. *See* Pls.' Statement of Genuine Issues at 4. By failing to challenge American's statement of facts, Plaintiffs' effectively concede its accuracy. *See* LCvR 56.1 ("In determining a motion for summary judgment,

the court may assume that facts identified by the moving party in its statement of material facts are admitted, unless such a fact is controverted in the statement of genuine issues filed in opposition to the motion.").

Interestingly, in their cross motion, Plaintiffs assert that the factual underpinnings of the reliance question remain in dispute and that further discovery is therefore warranted. *See* Pls.' Mem. at 26. The Court is decidedly unwilling to grant this odd request. First, as noted in the text, the record as it stands does not contain disputed facts on this point. Both Beato Cruz and the Benkens plainly believed that they could recover additional funds notwithstanding American's statements to the contrary. Were the Count Two Plaintiffs to present any subsequent testimony or informa-

ments regarding the limited extent of its liability amount to misrepresentations, they do not provide grounds on which to rescind the releases because the Count Two Plaintiffs did not rely on them.

 Moreover, the Court observes that the scope of the Warsaw Convention's liability limitations was something of an open question at the time American made the statements at issue in this case. In its October 1997 Memorandum Opinion, this Court determined that the Warsaw Convention did, in fact, impose the liability limitations that American described in the challenged statements. *See* Oct. 24, 1997, Mem. Op. While the United States Court of Appeals for the District of Columbia Circuit subsequently determined that the Warsaw Convention does not limit liability in this circumstance, it also recognized that federal courts have reached divergent conclusions regarding the breadth of the Convention's liability capping provisions. *See Cruz*, 193 F.3d at 529–30 (collecting cases). Notably, against precisely this backdrop, Judge Royce Lamberth recently determined that United Airlines had not misrepresented anything when informing passengers that the Warsaw Convention limited its liability for lost baggage. *See Curtin v. United Airlines, Inc.,* 120 F.Supp.2d 73 (D.D.C.2000). As Judge Lamberth explained, "United's statement about the extent of its liability constituted neither a mistake nor a misrepresentation; United merely stated its legal opinion as to the extent of its liability. Expressions of opinion do not constitute misrepresentations." *Id.* at 77 (citations omitted). For the same reason, this Court finds that

American's statements to its passengers do not constitute misrepresentations. Faced with an unsettled question of law regarding its liability, American simply informed its passengers of its view, under which its liability was capped. Such statements of opinion regarding unsettled questions of law do not amount to misrepresentations, and certainly do not constitute fraudulent or wrongful conduct. *Cf. Moses–Ecco Co. v. Roscoe–Ajax Corp.,* 320 F.2d 685, 690 (D.C.Cir.1963) ("[A] settlement payment, made when the law was uncertain, cannot be successfully attacked on the basis of any subsequent resolution of the uncertainty. Otherwise the public policy of encouraging settlements would be seriously undermined.") (internal citations omitted).

In short, the Court finds that Plaintiffs have failed to present a genuine issue of material fact with regard to their assertion that American misrepresented the extent of its liability and that the Count Two Plaintiffs' releases should be rescinded as a result. The Count Two Plaintiffs have provided testimony that clearly indicates that they did not rely on American's statements, whether or not such statements constitute misrepresentations. Additionally, in light of the unsettled state of the law at the time American expressed its views on Warsaw Convention liability limitations, American's statements do not constitute misrepresentations, nor do they amount to fraudulent or wrongful conduct.

#### b. *Mistake*

 As defined in the Restatement of Contracts, a "mistake" is "a belief that

---

tion contradicting their prior statements, the Court would disregard it. *See Pyramid Sec. Ltd. v. IB Resolution, Inc.,* 924 F.2d 1114, 1123 (D.C.Cir.1991) ("Courts have long held that a party may not create a material issue of fact simply by contradicting its prior sworn testimony."). Second, the Court notes that it

is the Count Two Plaintiffs' own reliance that is at issue. It is difficult to understand how further discovery might allow them to uncover additional material that demonstrates that they themselves relied on American's representations.

is not in accord with the facts." RESTATE-MENT (SECOND) OF CONTRACTS § 151 (1981). In each of the applicable jurisdictions, a factual mistake generally allows for rescission of a contractual instrument only when the mistake is mutual, not unilateral. *See, e.g., Nationwide Mut. Ins. Co. v. Voland,* 103 Md.App. 225, 653 A.2d 484, 489 (Md. Ct.Spec.App.1995) ("[T]he law in this State is clear that, absent intentional, culpable conduct, such as fraud, duress or undue influence, a unilateral mistake is ordinarily not a ground for relief from a contract.") (quoting *Creamer v. Helferstay,* 294 Md. 107, 448 A.2d 332, 339 (Md.1982)); *Langman v. Alumni Ass'n,* 247 Va. 491, 442 S.E.2d 669, 677 (Va.1994) ("A contract may be reformed or rescinded in equity on the ground of mutual mistake.... A unilateral mistake will not invalidate a contract.") (citations omitted); *Gumberts v. Greenberg,* 124 Ind.App. 138, 115 N.E.2d 504, 507 (Ind.Ct.App.1953) (holding that mutual mistake may support a decision to rescind a release, but that unilateral mistake does not).[9] For purposes of this analysis, "[a] mutual mistake has occurred if 'there has been a meeting of the minds, an agreement actually entered into, but the document in its written form does not express what the parties actually intended.'" *Estate of Spry v. Greg & Ken, Inc.,* 749 N.E.2d 1269, 1275 (Ind.App.,2001) (quoting *Plumlee v. Monroe Guar. Ins. Co.,* 655 N.E.2d 350, 356 (Ind.Ct.App.1995)); *see also Collins v. Dep't of Alcoholic Beverage Control,* 21 Va.App. 671, 467 S.E.2d 279, 283 (Va.Ct.App.1996); *Kishter v. Seven*

*Courts Cmty. Ass'n,* 96 Md.App. 636, 626 A.2d 993, 996 (Md.Ct.Spec.App.1993).

In the case before the Court, Plaintiffs argue that the contractual rescissions are fundamentally flawed because they are the product of a mutual mistake about the Warsaw Convention's liability limitations. *See* Pls.' Mem. at 17–19. Plaintiffs' assertion of mutual mistake fails for five separate reasons. First, Plaintiffs fail to clearly articulate any mistake on the part of the Count Two Plaintiffs. While they analyze American's alleged mistake in some detail, Plaintiffs simply omit any corresponding discussion of the manner in which the Count Two Plaintiffs may have been mistaken. *See id.* Second, even if the Court affords Plaintiffs the benefit of the doubt and infers an allegation of mistake on their part regarding liability caps, it is evident that Plaintiffs have not attributed the *same* mistake to both of the parties. Notably, Plaintiffs assert that American committed a mistake by capping its liability at the sum recoverable for a seventy-pound bag even though the airline's tariff schedule set the cap at the sum recoverable for the loss of a one-hundred-pound bag. *See id.* at 17. However, nothing in any of Plaintiffs' pleadings nor in the record before the Court indicates that the Count Two Plaintiffs suffered from comparable confusion about the distinction between baggage weights. In other words, while a charitable reading of Plaintiffs' pleadings *might* uncover an assertion that both parties were mistaken, the parties' mistakes related to different matters,

---

**9.** Each of these jurisdictions allows for reformation of written contractual documents on the basis of unilateral mistake when a plaintiff demonstrates that the defendant acted in a fraudulent or similarly blameworthy manner. *See, e.g., Hill v. Brooks,* 253 Va. 168, 482 S.E.2d 816, 823 (Va.1997); *Voland,* 653 A.2d at 489; *Kruse, Kruse & Miklosko, Inc. v. Beedy,* 170 Ind.App. 373, 353 N.E.2d 514, 529

(Ind.Ct.App.1976). As explained in the Court's assessment of misrepresentation, however, Plaintiffs have failed to establish that American acted in an actionably culpable or fraudulent fashion when informing the Count Two Plaintiffs that its liability was capped. Accordingly, even a unilateral mistake on Plaintiffs' part would not merit rescission of the release.

and, accordingly, there was never an erroneous meeting of the minds that could constitute a mutual mistake. *Cf. Estate of Spry,* 749 N.E.2d at 1275.

■ Third, Plaintiffs have absolutely failed to account for the record evidence demonstrating that the Count Two Plaintiffs *did not* hold a mistaken belief that American's liability was capped by the Warsaw Convention. Importantly, the record reflects that both Beato Cruz and the Benkens accepted the terms of their releases notwithstanding their belief that American was liable beyond the sum offered and accepted. *See, e.g.,* Tycko Decl., Ex. A at 43–44; Ex. B at 77–78, 80–81. Fourth, as noted above in the Court's assessment of misrepresentation, the applicable law was unsettled at the time that American issued its statements in which it articulated its view of its limited liability. In light of the unsettled nature of the law, it was not a mistake for American or any other airline to reach the conclusion that its liability was capped regardless of whether it had recorded the number and weight of baggage. *See Curtin,* 120 F.Supp.2d at 77; *cf. Moses–Ecco,* 320 F.2d at 690. Finally, the Court notes that the mistakes Plaintiffs describe are mistakes of law, namely, mistakes regarding the applicability of a treaty's liability caps. In the jurisdictions in question, however, rescission is available only when the parties suffer from a mutual mistake of *fact,* not a mutual mistake of law. *See, e.g., Estate of Spry,* 749 N.E.2d at 1275 ("[R]eformations for mistakes are only available if they are mistakes of fact, not if they are mistakes of law."); *High Knob Assocs. v. Douglas,* 249 Va. 478, 457 S.E.2d 349, 355 (Va.1995); *Hous. Auth. v. Macro Hous., Inc.,* 275 Md. 281, 340 A.2d 216, 219–220 (Md.1975).

For the foregoing reasons, the Court finds that Plaintiffs have failed to present a genuine factual dispute regarding the existence of a mutual mistake of fact.[10] Because Plaintiffs also failed to establish any disputed material facts regarding the question of misrepresentation, the Court finds that the Count Two Plaintiffs' contractual releases are valid for purposes of summary judgment.[11] By executing those valid releases, the Count Two Plaintiffs released all further claims stemming from the loss of their baggage. Accordingly, the Court shall grant judgment in favor of American with regard to all of the Count Two Plaintiffs' claims.

### 2. Cruz Plaintiffs (Count One)

The Cruz Plaintiffs, whose claims are presented in Count One of the Second Amended Complaint, assert that American lost five bags, worth approximately $15,000 in aggregate, on an American Airlines flight from Washington, DC, to Santo Domingo, Dominican Republic, on December 21, 1995. *See* 2nd Compl. ¶¶ 5–10. In

---

10. The parties disagree about whether Plaintiffs' arguments regarding mistake apply to an erstwhile Count Two subclass comprised of individuals who flew on American flights to and from the Caribbean. *See* Def.'s Reply at 11–12; Pls.' Reply at 6–8. The Court does not resolve this dispute because it has already determined that there has not been any mistake, unilateral or mutual, that would serve to rescind the Count Two Plaintiffs' releases in any case.

11. American argues in the alternative that the Count Two Plaintiffs have not tendered back the funds they received as part of the contractual releases. *See* Def.'s Mot. for Summ. J. at 21–23. American asserts that this failure to "tender back" bars Plaintiffs from pursuing these claims even if the releases should be rescinded for reasons of mistake or misrepresentation. *See id.* Because the Court finds that there has been no mistake or misrepresentation justifying rescission, it does not address American's alternative argument.

earlier proceedings in this suit, the Court determined that American was responsible for the loss, but that the Warsaw Convention capped the airline's liability at $9.07 per pound, even though American had failed to record the weight of each of the checked bags as the Warsaw Convention requires. *See* Oct. 24, 1997, Mem. Op. at 11. Concluding that Plaintiffs were aware that American applied a "deemed weight" to bags that it did not actually weigh, and observing that Plaintiffs had paid excess baggage fees that boosted the "deemed weight" for three of the five lost bags, the Court determined that Plaintiffs were entitled to judgment in an amount equal to $9.07 for each pound of deemed weight. *See id.* at 13–18 & n. 9. In a separate opinion issued in January 1998, the Court determined that the lost bags had an aggregate "deemed weight" of 675 pounds and accordingly entered judgment in Plaintiffs' favor in the amount of $6,122.25. *See* Jan. 5, 1998, Mem. Op. at 8–9.

On subsequent appeal, the United States Court of Appeals for the District of Columbia Circuit addressed the availability of Warsaw Convention liability caps when an airline fails to record the actual weight of baggage it carries. *See Cruz,* 193 F.3d 526. Concluding that the Convention offers no protection for such carriers, the circuit court vacated this Court's earlier entry of judgment and remanded the case. *See id.* at 530, 532. Following the issuance of the circuit court's opinion, the Cruz Plaintiffs prepared a Second Amended Complaint in which they seek (1) a declaration that American's 30–Day Rule is unlawful, (2) an injunction barring American from "publishing, applying or enforcing" the Rule, (3) a declaration that the Cruz Plaintiffs are entitled to compensation for their lost bags, (4) a declaration of "the lawful measure of [American]'s liability to the class members as compensation," and (5) compensatory damages in an amount

equal to the fair value of the lost baggage or, when appropriate, "the amount which results from multiplying $9.07/lb. by the 'deemed weight' " of the lost bag. *See* 2nd Compl., Wherefore Clause following ¶ 19.

The Court addresses the Cruz Plaintiffs' requests for relief sequentially, turning first to requested declaratory and injunctive relief pertaining to American's filing deadlines, then to the request for a declaration indicating the Cruz Plaintiffs' entitlement to recovery, and finally to their request for a lawful measure by which to calculate damages and entry of judgment in a corresponding amount.

### a. Lawfulness of the 30–Day Rule

█ In their Second Amended Complaint, Plaintiffs argue that American's 30–Day Rule is invalid because American never published it in tariff lists maintained by the Department of Transportation. *See* Pls.' Mem. at 32. Accordingly, Plaintiffs seek a court order declaring that the Rule is unlawful and an injunction barring American from continuing to employ it. *See* 2nd Compl., Wherefore Clause following ¶ 19.

Upon considering precisely the same claim in its October 24, 1997, Memorandum Opinion, the Court concluded that it lacked authority to consider the matter because Plaintiffs had failed to demonstrate an adequate probability of future injury. *See* Oct. 24, 1997, Mem. Op. at 23–26. Specifically, the Court questioned the likelihood that American might again fail to record the weight of the Cruz Plaintiffs' luggage and again lose such luggage on an international flight. Reasoning that this speculative scenario "fails to present a future injury that is of sufficient immediacy and reality to form a live case or controversy," the Court concluded that Plaintiffs lacked standing to pursue the claim and

that the Court therefore lacked subject matter jurisdiction to consider it. *Id.* at 24–26 (citing *City of Los Angeles v. Lyons*, 461 U.S. 95, 104, 103 S.Ct. 1660, 75 L.Ed.2d 675 (1983)). On appeal, the circuit court acknowledged the jurisdictional ruling, declined to upset it, and observed that this Court would need to address the question anew only "in the event that our remand ... breathes life into the Cruzes' claims for declaratory and injunctive relief." *Cruz*, 193 F.3d at 532.

▆ The appeals court's remand has not resurrected Plaintiffs' challenge to the 30–Day Rule in any respect. In order to bring a claim in federal court, plaintiffs must satisfy the requirements of Article III standing, an " 'irreducible constitutional minimum' [that] consists of three elements." *Vermont Agency of Natural Res. v. United States, ex rel Stevens*, 529 U.S. 765, 120 S.Ct. 1858, 1862, 146 L.Ed.2d 836 (2000) (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992)). To satisfy Article III standing requirements, plaintiffs must show that (1) they have suffered an injury-in-fact; (2) there is a causal connection between the improper conduct and the injury suffered; and (3) the relief requested is likely to redress the injury. *See Vermont Agency*, 120 S.Ct. at 1862–63; *Lujan*, 504 U.S. at 560, 112 S.Ct. 2130.

In this case, while the Cruz Plaintiffs have demonstrated that they suffered an injury when their bags were lost, they fail to explain how the requested relief regarding the 30–Day Rule redresses that injury.

*See Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 103, 118 S.Ct. 1003, 140 L.Ed.2d 210 (1998) (requiring plaintiffs to demonstrate "redressability—a likelihood that the requested relief will redress the alleged injury"). That is, even if the Court were to issue the requested declaratory and injunctive order, the Cruz Plaintiffs would receive no meaningful relief pertinent to their injury. Their bags would still be missing, and they would not have received any compensation for them.[12] Because they have failed to demonstrate how the requested relief redresses this injury, Plaintiffs lack standing to bring this claim.[13]

▆ Arguably, the injury in question relates not to the bags that the Cruz Plaintiffs have already lost, but rather to the possibility that they may lose more bags on future American flights. If this is, indeed, the applicable injury for which Plaintiffs seek relief, the Court concludes (as it did in 1997) that it is simply too speculative and remote to qualify as an injury-in-fact. *See* Oct. 24, 1997, Mem. Op. at 24–26. Accordingly, even under this charitably revised view of the alleged injury, Plaintiffs lack standing because they cannot demonstrate injury-in-fact.

In support of its conclusions with respect to standing, the Court notes that Plaintiffs fail to offer any response whatsoever to American's briefing on the issue. While American presents its standing arguments persuasively and vigorously, *see* Def.'s Mot. for Summ. J. at 24–26, Plain-

---

**12.** As American recognizes, standing considerations do not bar Plaintiffs from pursuing monetary relief because money damages would redress the injury in question. *See* Def.'s Mot. for Summ. J. at 24.

**13.** In an alternative argument, American asserts that the 30–Day Rule is not unlawful because it is simply an internal mechanism that the airline uses to assess which claims to

settle. *See* Def.'s Mot. for Summ. J. at 26–34. Having concluded as a threshold matter that Plaintiffs lack standing to pursue this claim, the Court is precluded from considering the merits of the parties' competing positions. Accordingly, the Court does not address American's alternative argument regarding the validity of the 30–Day Rule.

tiffs avoid the subject altogether, effectively conceding that they are precluded from bringing these claims for relief. In fact, even after American expressly noted Plaintiffs' failure to address standing, *see* Def.'s Reply at 12–13, Plaintiffs neglected to devote a single sentence to the topic in their own, subsequently filed reply.

In short, the Court finds that it has no occasion to assess the ongoing validity or lawfulness of the 30–Day Rule because Plaintiffs lack standing to challenge it. Accordingly, the Court shall grant summary judgment in American's favor with respect to Plaintiffs' request for declaratory and injunctive relief regarding the lawfulness of the Rule.

### b. Declaration of Liability

■ In Count One, Plaintiffs also seek a declaration that they "are entitled to receive from [American] compensation for their lost or damaged checked baggage." 2nd Compl., Wherefore Clause following ¶ 19. With regard to this sub-claim, the Court finds that Plaintiffs are entitled to judgment simply because American has conceded the underlying issue of liability. When resolving American's original motion for summary judgment, the Court accepted American's limited concession of liability and focused its attention on calculating damages available under the Warsaw Convention's liability limitations. The court of appeals subsequently rejected this Court's conclusion that American's liability is limited in these circumstances, yet it, too, observed that American had "[c]onced[ed] for the purposes of litigation that it had both lost the Cruzes' luggage and improperly

denied their lost luggage claim." *See Cruz*, 193 F.3d at 527–30.

While American's original concession of liability may have been limited solely to its original motion, American has conceded liability for purposes of this motion as well. Notably, in its reply, American states that "[a]ll that is left is for the Cruz Plaintiffs to put on their case for the value of their lost items." *See* Def.'s Reply at 2. In other words, American effectively acknowledges that the question of liability has been resolved and that the issue of damages is all that remains. Thus, the Court finds that Plaintiffs are entitled to compensation for their lost bags as a matter of law. Accordingly, the Court shall grant judgment in favor of the Cruz Plaintiffs with respect to this single issue.

### c. Additional Damages

Finally, Plaintiffs ask the Court to award compensatory damages in an amount equal to the fair value of their lost baggage. *See* 2nd Compl., Wherefore Clause following ¶ 19.[14] American seeks summary judgment with regard to this request for relief by arguing that Montreal Protocol 4 has retroactively abated the provisions of the Warsaw Convention that precluded the airline from limiting its liability in these circumstances. *See* Def.'s Mot. for Summ. J. at 34–37. Thus, American reasons that Montreal Protocol 4 effectively limits its liability and that Plaintiffs have already received such limited compensation because American has satisfied this Court's since-vacated judgment in favor of Plaintiffs. *See id.* In its cross mo-

---

**14.** Recognizing that American has already satisfied the Court's earlier, vacated judgment awarding them $6,122.25, Plaintiffs presently request only the difference between the fair market value and the amount already provided. *See* 2nd Compl., Wherefore Clause following ¶ 19. With regard to potential future class members whose causes of action accrued after Montreal Protocol 4 took effect on March 4, 1999, Plaintiffs seek the lesser of the fair market value of lost baggage or "the amount which results from multiplying $9.07/lb. by the 'deemed weight'" of the lost bag. *Id.*

tion for summary judgment, Plaintiffs contest American's abatement theory, yet fail to provide any argument or evidence demonstrating the additional damages they seek. *See* Pls.' Mem. at 3–5. Concluding that abatement is not applicable in this circumstance and that Plaintiffs have failed to argue for judgment in their favor, the Court shall deny both parties' request for judgment with regard to this request for relief.

■ In essence, American contends that the provisions of Montreal Protocol 4 govern this action notwithstanding the fact that the Protocol entered into force *after* the Cruz Plaintiffs lost their bags and notwithstanding the appeals court's subsequent determination that the Protocol did not merely clarify corresponding Warsaw Convention provisions. In fact, American pursues its abatement argument even though the *Cruz* court unambiguously held that the applicable provisions of the Protocol "clearly *amend* prior law [and] as such they cannot possibly be given retroactive effect by being labeled a 'clarification.'" *Cruz*, 193 F.3d at 530 (emphasis in original).

■ The abatement doctrine reflects "the principle that a court is to apply the law in effect at the time it renders its decision, unless doing so would result in manifest injustice or there is statutory direction or legislative history to the contrary." *Bradley v. School Bd.*, 416 U.S. 696, 711, 94 S.Ct. 2006, 40 L.Ed.2d 476 (1974). In other words, if a party violates a statute, but the pertinent provision is altered before a judgment or verdict is entered, the pre-existing version of the statute abates, and the party avoids sanction. The doctrine applies most logically to cases involving "great national concerns" and matters of constitutional magnitude. *Id.* at 712, 94 S.Ct. 2006 (quoting *United States v. Schooner Peggy*, 1 Cranch 103, 5 U.S. 103, 2 L.Ed. 49 (1801) (Marshall, C.J.)). It does not generally apply to private disputes. "[I]n mere private cases between individuals, [however] a court will and ought to struggle hard against a construction which will, by a retroactive operation, affect the rights of parties." *Id.* (quoting *Schooner Peggy*, 1 Cranch 103, 2 L.Ed. 49).

With regard to most congressionally enacted statutes, general abatement principles do not apply because Congress long ago enacted a "general saving provision" that ensures that "penalties and liabilities . . . incurred [prior to repeal] are not . . . extinguished by the repeal of a statute 'unless the repealing Act shall so expressly provide.'" *United States v. Chambers*, 291 U.S. 217, 224, 54 S.Ct. 434, 78 L.Ed. 763 (1934) (construing 1 U.S.C. § 109).[15] While recognizing Congress' authority to prevent the doctrine from affecting statutes, the Supreme Court has noted that Congress lacks authority to curb the doctrine's application to the Constitution and, presumably, to treaties, reasoning that the legislature is powerless to act on its own initiative in these areas. *See id.* Thus, because the general savings provision does not apply to treaties such as the Warsaw Convention, general abatement principles would seemingly apply to treaty amendments like those at issue in this case.

---

15. In pertinent part, 1 U.S.C. § 109, captioned "Repeal of statutes as affecting existing liabilities," provides as follows:

The repeal of any statute shall not have the effect to release or extinguish any penalty, forfeiture, or liability incurred under such statute, unless the repealing Act shall so expressly provide, and such statute shall be treated as still remaining in force for the purpose of sustaining any proper action or prosecution for the enforcement of such penalty, forfeiture, or liability.

1 U.S.C. § 109.

Nonetheless, the Court finds that, for several interrelated reasons, the abatement doctrine does not apply in this case. First, as the *Bradley* Court noted, the abatement doctrine does not apply to cases in which retroactive application of law would result in "manifest injustice." *Bradley,* 416 U.S. at 711, 94 S.Ct. 2006; *see also United States v. Schumann,* 861 F.2d 1234, 1238 (11th Cir.1988). Exploring this contour further, the *Bradley* Court reasoned that "manifest injustice" would result if the case involved a private dispute between private litigants over a private concern. *See Bradley,* 416 U.S. at 717–22, 94 S.Ct. 2006. Observing that the dispute in *Bradley* involved a public school board and the plaintiffs' right to a nondiscriminatory education, the Supreme Court determined that the Education Amendments Act of 1972 abated preexisting attorney's fees provisions. *See id.* The tenor of the case before this Court, by contrast, is entirely different. Here, private litigants dispute the proper consequences of an airline's failure to record and track baggage. The suit simply does not implicate fundamental rights or rights of a constitutional stature. Thus, because of the entirely private nature of the litigants and the rights involved, the Court finds that retroactive application of law would work a "manifest injustice" on Plaintiffs. For this reason, the abatement doctrine does not apply.

Second, the Court notes that the doctrine typically applies to criminal matters and the possibility that a defendant may face conviction under a law that no longer has force. *See Oneida County v. Oneida Indian Nation,* 470 U.S. 226, 245 n. 17, 105 S.Ct. 1245, 84 L.Ed.2d 169 (1985) ("The doctrine principally applies to criminal law, and provides that all prosecutions that have not proceeded to final judgment under a statute that has been repealed or has expired have abated, unless the repealing legislature provides otherwise.") (citing

*Warden v. Marrero,* 417 U.S. 653, 660, 94 S.Ct. 2532, 41 L.Ed.2d 383 (1974)). This case, quite obviously, does not implicate criminal liability. Thus, it would be atypical for the Court to abate the Warsaw Convention's baggage processing provisions.

Moreover, the Court notes that nothing in Montreal Protocol 4 itself, nor in the Senate Report or floor debate that accompanied its ratification, indicates that the Protocol was intended to abate the Warsaw Convention. *See* S.Rep. No. 105–20, at 9; 144 Cong. Rec. S11,059–12 (daily ed. Sept. 28, 1998). Additionally, as noted above, the United States Court of Appeals for the District of Columbia Circuit has considered the interplay between the Protocol and the Convention and has determined that the provisions of the Protocol "cannot possibly be given retroactive effect." *Cruz,* 193 F.3d at 530.

■ For each of these reasons, the Court concludes that the doctrine of abatement does not apply in these circumstances. Thus, notwithstanding the subsequent ratification of Montreal Protocol 4, the Warsaw Convention's baggage processing provisions govern this suit. As the court of appeals clearly held, the Convention's provisions do not limit an airline's liability for lost baggage where, as here, the airline neglected to record the weight of the bags prior to an international flight. *See id.* Accordingly, the Court shall deny American's motion for summary judgment with respect to Plaintiffs' claim for additional damages beyond the amount already awarded.

■ The Court shall also deny Plaintiffs' corresponding cross motion for summary judgment. Rather than explain why disposition in their favor would be appropriate, Plaintiffs devote their pleadings solely to arguing that American is not

entitled to judgment. Finding that they have neglected to articulate why judgment is warranted in their favor or to present evidence relating to the lost bags and their value, the Court shall deny Plaintiffs' motion with regard to this request for relief as well.

Before turning briefly to the question of class certification, the Court summarizes its conclusions regarding the parties' motions for summary judgment. With respect to all of the claims presented by the Count Two Plaintiffs (Beato Cruz and the Benkens), the Court shall grant American's motion and deny Plaintiffs' cross motion. With respect the Cruz Plaintiffs' request for declaratory and injunctive relief related to American's 30–Day Rule, the Court shall grant American's motion and deny Plaintiffs' cross motion. With respect to their request for a declaration that they are entitled to compensation for their lost baggage, the Court shall grant Plaintiffs' cross motion and deny American's motion. Finally, with respect to Plaintiffs' request for damages beyond the amount already awarded, the Court shall deny both parties' motions. Thus, following these rulings, the only surviving claim is the Cruz Plaintiffs' request for additional compensation for their lost bags.

## D. Class Certification

As described above, the Court has exercised its discretion by addressing the pending motions for summary judgment before considering Plaintiffs' motion for class certification. Because the Court's resolution of the dispositive motions has drastically changed the landscape of the case, leaving only one sub-element of one claim unresolved, the Court finds that the parties' briefing on the issue of certification is largely obsolete. Thus, rather than consider a certification motion that explores claims and parties no longer in-volved in the litigation, the Court shall deny the motion without prejudice and allow Plaintiffs forty-five days to file a revised motion that reflects the current posture of the suit.

## E. Referral

In light of the changed posture of the case, the Court is inclined to refer the matter to a magistrate judge for possible settlement of the sole remaining claim. Accordingly, if the Court does not hear otherwise from either party within ten days of the date of this decision, it shall issue a referral order.

## III. CONCLUSION

For the foregoing reasons, the Court shall grant American's motion for summary judgment in part and deny it in part. Likewise, the Court shall grant Plaintiffs' cross motion for summary judgment in part and deny it in part. The Court shall also deny the pending motion for class certification without prejudice and allow Plaintiffs to file a revised certification motion no later than August 16, 2001. If the Court does not hear otherwise from either party by the close of business on July 12, 2001, it shall refer the suit to a magistrate judge for possible settlement. An Order accompanies this Memorandum Opinion.

## ORDER

For the reasons stated in the accompanying Memorandum Opinion, it is, this 2 day of July, 2001, hereby

**ORDERED** that Defendant American Airlines' Motion for Summary Judgment [# 110] is GRANTED in part and DENIED in part; it is further

**ORDERED** that, to the extent that Defendant American Airlines seeks judgment with regard to all claims articulated in Count Two of Plaintiffs' Second Amended

Complaint, Defendant American Airline's Motion for Summary Judgment is granted; it is further

**ORDERED** that, to the extent that Defendant American Airlines seeks judgment with regard to the Cruz Plaintiffs' request for declaratory and injunctive relief regarding its 30–Day Rule, Defendant American Airline's Motion for Summary Judgment is granted; it is further

**ORDERED** that, to the extent that Defendant American Airlines seeks judgment with regard to the Cruz Plaintiffs' request for a declaration that they are entitled to compensation, Defendant American Airline's Motion for Summary Judgment is denied; it is further

**ORDERED** that, to the extent that Defendant American Airlines seeks judgment with regard to the Cruz Plaintiffs' request for additional compensation beyond amounts already tendered, Defendant American Airline's Motion for Summary Judgment is denied; it is further

**ORDERED** that Plaintiffs' Cross Motion for Summary Judgment [# 115] is GRANTED in part and DENIED in part; it is further

**ORDERED** that, to the extent Plaintiffs seek judgment with respect to the Cruz Plaintiffs' request for a declaration that they are entitled to compensation for their lost bags, Plaintiffs' Cross Motion for Summary Judgment is granted; it is further

**ORDERED** that Plaintiffs' Cross Motion for Summary Judgment is denied in all other respects; it is further

**ORDERED** that Plaintiffs' Motion for Class Certification [# 109] is DENIED WITHOUT PREJUDICE and that Plaintiffs may file a revised certification motion no later than August 16, 2001; it is further

**ORDERED** that, if the Court does not hear otherwise from either party by the close of business on July 12, 2001, it shall refer this suit to a magistrate judge for possible settlement.

**SO ORDERED.**